# Leard *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Eminent domain—Condemnation proceedings—Witness—Evidence—Damages.*

1. When, in a proceeding to assess damages for land taken by a railroad company, a witness is called to prove the market value of the land, it is the right of the other side, before the witness proceeds, to inquire as to his qualifications to express an opinion on the subject. When this right has been exercised or waived, and the witness admitted, after he has testified to the market value of the land at the time of its appropriation, his competency to testify to the market value as affected by the construction of the railroad, follows as matter of course.

2. After the competency of such a witness has been established it is not error for the court to refuse to permit him to be interrupted so as to allow counsel, before the witness has expressed an opinion, to inquire of him what elements of damage he had taken into consideration in making his estimate.

3. The construction of bridge piers in the bed of a navigable stream may be taken into consideration as an element of damages in condemnation proceedings where the evidence shows that the piers changed the current of the stream so as to endanger the plaintiff's land in times of ordinary high water and freshets. In such a case where a number of competent witnesses testify that in such freshets as might be expected to take place at that locality, some thirty-seven acres of plaintiff's land would be exposed to invasion by water, the question whether their testimony is sufficient to establish a degree of probability amounting to a reasonable certainty that the apprehended danger will be realized, is a question for the jury.

Argued Oct. 10, 1910. Appeal, No. 114, Oct. T., 1910, by defendant, from judgment of C. P. Indiana Co., Sept. T., 1906, No. 157, on verdict for plaintiff in case of M. K. Leard et al. *v.* Pennsylvania Railroad Company. Before Fell, C. J., Mestrezat, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Appeal from award of jury of view. Before Telford, P. J.

At the trial after William Nesbitt, a witness for the plaintiff, had testified as to his qualifications he was asked this question:

"Q. From your knowledge of the land since the construction of the railroad, what would you say was the market value of the real estate immediately after the appropriation and construction of the railroad, as affected by it?"

Mr. Banks: We propose to inquire of the witness what he embraces in his estimate of depreciation as to the value of the land, for the purpose of ascertaining whether or not he takes the elements that are competent to be taken into consideration in his estimate of the value of the land since the construction of the railroad as affected by it.

The Court: Motion for leave to cross-examine the witness at this point in his examination in chief is refused, an exception is noted to defendant and bill sealed. [1]

Mr. Peelor: Question read. "A. One-half less. Q. State whether or not you mean for the whole farm? A. Yes, sir, one-half less for the whole farm."

The court charged in part as follows:

[The plaintiffs also claim additional injury, which they claim will be a consequence following the construction of the bridge and the fill, that is that the river in high stages of water or in case of ice gorges at or above the bridge, the water will be thrown out of the river channel and will injure or destroy some thirty-seven acres of bottom land above the bridge. There has been some evidence of the character of floods that have occurred on this river prior to the construction of the fill and bridge; also evidence of the character of the banks and depressed lands some 200 or 300 feet beyond the river bank. From what floods have occurred and from the character of the river bank and land adjoining at or near the north side of the bridge and fill, you are asked to assume that such floods as have occurred will occur again in the future,

and when they do occur, in consequence of the bridge impeding and obstructing the natural flow of the water, the bank will be overflowed and channels cut through the low lands above the bridge, injuring the defendant's property. If you will find that such a danger is impending, and that the bridge or fill or both will be the proximate cause of such injury, then it will be proper for you to consider it as it may affect the market value of the farm.] [6]

Verdict and judgment for plaintiff for $7,750. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions, and (6) portion of charge as above, quoting it.

*J. N. Banks*, with him *Samuel Cunningham* and *J. S. Fisher*, for appellant.—The court should have allowed the question asked Nesbitt: Davis v. R. R. Co., 215 Pa. 581; Wallace v. Jefferson Gas Co., 147 Pa. 205; Reading, etc., R. R. Co. v. Balthaser, 119 Pa. 472.

There is no liability on part of a railroad company for not providing against extraordinary floods or extraordinary ice gorges: Pittsburg, etc., Ry. Co. v. Gilleland, 56 Pa. 445; Berninger v. R. R. Co., 203 Pa. 516; Denniston v. Phila. Co., 161 Pa. 41.

A railroad company in the reasonable exercise of its franchise has the right to erect a bridge over a navigable stream, and is only liable for negligence in construction of the bridge: Jutte v. Keystone Bridge Co., 146 Pa. 400; Braine v. Northern Cent. Ry. Co., 218 Pa. 43; Denniston v. Phila. Co., 161 Pa. 41.

*Elder Peelor*, with him *George J. Feit* and *M. C. Watson*, for appellees.—The plaintiffs had a right to recover for loss of market value by reason of· danger of floods of which the bridge and fill were the proximate cause: Constitution of Pennsylvania, art. XVI, sec. 8; Mellor v.

Phila., 160 Pa. 614; Cooper v. Scranton City, 21 Pa. Superior Ct. 17; Snyder v. City of Lancaster, 20 W. N. C. 184.

OPINION BY MR. JUSTICE STEWART, January 3, 1911:

The first and third assignments are without merit. When, in a proceeding to assess damages for land taken by a railroad company, a witness is called to prove the market value of the land, it is the right of the other side, before the witness proceeds, to inquire as to his qualifications to express an opinion on the subject. When this right has been exercised or waived, and the witness admitted, after he has testified to the market value of the land at the time of its appropriation, his competency to testify to the market value as affected by the construction of the railroad, follows as matter of course. The ruling here complained of was the refusal of the court to permit interruption at this stage of the case to allow counsel for the defendant, before the witness had expressed an opinion, to inquire of him what elements of damage he had taken into consideration in making his estimate. Such an examination would not have affected the competency of the witness. That had been established. If it appeared that he had abated somewhat from the market value before the appropriation because of something which the law would exclude from consideration, it would simply show a mistake on his part which could be corrected then and there, with equal effect whether during his examination in chief or upon cross-examination.

An element of damage considered in the case was the liability of plaintiff's land to flooding because of a bridge erected by the defendant company over the Conemaugh river at this point. The bridge is supported by piers which rest on the river bed, and it was claimed that a change in the current of the stream had resulted in consequence; that it now flows towards plaintiff's land whereas before the flow was to the opposite bank, thus

endangering plaintiff's land in times of high water and freshets. Inasmuch as the danger does not arise from anything done on the land of plaintiff's which was appropriated by the defendant company, it is contended that it was not an element of damage to be considered. This same question was presented in the case of White v. Penna. R. R. Co., post, p. 480, decided at this present term, and was there fully considered. The ruling in that case applies here. If the liability to flooding because of the bridge piers is so pronounced as to reduce the market value of the land, the plaintiff is entitled to be compensated therefor notwithstanding the piers from which the danger arises are in the bed of a navigable stream. The chief contention was that because of the configuration of the plaintiff's land it could be endangered by nothing short of an extraordinary flood; and that this much is to be derived from plaintiff's own witness. The argument on this proposition is not convincing; that is to say, the proposition is not sufficiently established to justify a court in ruling as matter of law that the evidence amounts to nothing more than a mere conjectural probability of a future flooding. A number of witnesses familiar with the conduct of the river, and acquainted with the general situation in the neighborhood of the bridge, testified that in such freshets as are there to be expected, some thirty-seven acres of plaintiff's land would be exposed to invasion. There can be no question as to the competency of these witnesses. Whether their testimony was sufficient to establish a degree of probability amounting to a reasonable certainty, that the apprehended danger would be realized, was a question for the jury. The instruction of the learned trial judge on this branch of the case was most explicit. His instruction to the jury was as follows: "The effect of extraordinary floods, the occurrence of which is not looked for and unexpected, you will not consider. Whether or not the floods concerning which witnesses have testified as occurring in the river at this point, by reason of regular or frequent occurrences, may

be regarded as ordinary, and their occurrences may be expected and naturally anticipated, is for the jury to determine." We find nothing in any of the assignments of error calling for a reversal.

Judgment is affirmed.