463 A.2d 463

**STATE FARM INSURANCE COMPANY, Appellant,**

v.

**Patricia BULLOCK and Francis Green.**

Superior Court of Pennsylvania.

Argued Feb. 17, 1981.

Filed July 22, 1983.

Joseph T. Murphy, Jr., Philadelphia, for appellant.

Fred Lowenchuss, Philadelphia, for appellee.

Before PRICE *, MONTEMURO and VAN der VOORT, JJ.

MONTEMURO, Judge:

On November 1, 1975, appellees, Patricia Bullock and Francis Green, were involved in a motor vehicle accident when the vehicle they were driving was struck by a vehicle driven by one Daniel Shields. Bullock commenced an action in trespass against Shields in the Court of Common Pleas of Philadelphia County. The case proceeded to compulsory arbitration and an award was entered in Bullock's favor in the amount of Eight Thousand ($8,000.00) Dollars. The award was properly appealed to the court of common pleas, for a trial *de novo*, by Shields insurer, Safeguard Mutual Insurance Company (hereinafter Safeguard).

On May 29, 1979, while that appeal was pending, the Insurance Commissioner of Pennsylvania, pursuant to the authority granted by 40 P.S. § 221.10(a),[1] issued a summary order suspending the business of Safeguard in this Commonwealth. The order also stated that an examination of the books, records, accounts and affairs of Safeguard revealed that "as of December 3, 1977, as of December 31, 1978, and at present, Safeguard is insolvent."[2]

---

* Judge Price did not participate in the consideration or decision of this case.

**1.** Act of May 17, 1921, P.L. 789, No. 285, art. V, § 501, *et seq.*, added Act of December 14, 1977, P.L. 280, No. 92, § 1, 40 P.S. § 221.1, *et seq.*

**2.** On April 21, 1982 the Commonwealth Court issued a consent order directing the liquidation of Safeguard pursuant to Article V of the Insurance Department Act of 1921, as amended 40 P.S. § 221.1, *et seq.* The Court also made a finding that Safeguard was insolvent.

■ Thereafter, the appellees, Bullock and Green, through. counsel, made a claim against Bullock's insurer, State Farm Insurance Company (hereinafter State Farm), under the uninsured motorist coverage provision of her policy. They contended that Safeguard's financial status and the Commissioner's order had the effect of rendering Shields uninsured, thus triggering the uninsured motorist coverage. State Farm refused coverage and the appellees sought arbitration of the claim. State Farm sought to enjoin the arbitration; however, the court below ordered it to proceed thereto in accordance with *Mapp v. Nationwide Insurance Company*, 268 Pa.Super. 404, 408 A.2d 850 (1979).[3] At arbitration the appellees, Bullock and Green, were awarded Twelve Thousand, Five Hundred ($12,500.00) Dollars and Two Thousand, Five Hundred ($2,500.00) Dollars, respectively.

Appellees filed a petition to confirm the arbitration award which was countered by State Farm's petition to vacate the arbitration award. Two major issues were presented in these petitions: (1) whether the arbitration was conducted pursuant to common law (appellee's contention) or the Arbitration Act of 1927 [4] (State Farm's contention); and (2)

3. In *Mapp*, the insured was involved in a motor vehicle accident and recovered the policy limits from the tortfeasor's insurer. He then sought to recover for his damages in excess of that amount from his own insurer under the uninsured.motorist coverage provisions of his policy on the ground that the tortfeasor was uninsured to the extent that his liability coverage did not meet the damages suffered. His insurer refused to arbitrate and the trial court denied the insured's motion to compel arbitration. This court reversed and remanded for the appointment of an arbitrator. *Mapp* was specifically overruled by the decision of an *en banc* panel of this court in *White v. Concord Mutual Insurance Company*, 296 Pa.Super. 171, 442 A.2d 713 (1982), *aff'd.* 500 Pa. 103, 454 A.2d 982 (1982). Despite the lower court's reliance on *Mapp*, the determination that the appellee's claim was arbitrable was proper under both the policy language and relevant case law. *Henderson v. State Farm Mutual Insurance Company*, 292 Pa.Super. 333, 437 A.2d 411 (1981) (petition for allowance of appeal denied), *Gordon v. Keystone Insurance Company*, 277 Pa.Super. 198, 419 A.2d 730 (1980).

4. Act of April 25, 1927, P.L. 381, No. 248, § 1 *et seq*, 5 P.S. § 161 *et seq.* repealed and superseded by Act of October 5, 1980, P.L. 693, No. 142, § 501(a), 42 Pa.C.S.A. § 7301, *et* seq.

whether the appellees, because of Safeguard's financial status, were eligible to recover under the uninsured motorist coverage provision.

The court below granted the appellees' petition to confirm and denied State Farm's petition to vacate after concluding that the appellees would prevail on both issues. The court's reasoning was that, assuming *arguendo*, the arbitration was pursuant to common law, then the limited scope of review would preclude disturbing the award inasmuch as there was no allegation of fraud, misconduct or illegality. *Runewicz v. Keystone Insurance Company*, 476 Pa. 456, 383 A.2d 189 (1978). Alternatively, it concluded that even under the Act of 1927, with its broader scope of review, the arbitration panel had correctly determined the question of appellees' eligibility.

■ On appeal, State Farm raises only the issue of appellees' eligibility to recover under the uninsured motorist coverage provisions of the policy. We conclude that Safeguard's financial status (as of the time of the appellees' claim) was sufficiently uncertain so as to render Daniel Shields uninsured, thus triggering the appellees coverage under the uninsured motorist provisions in Bullock's policy with State Farm.

The Uninsured Motorists Act, 40 P.S. § 2000 requires each insurance policy delivered or issued for delivery in this Commonwealth to include uninsured motorist coverage. Uninsured motorist is defined so as to include a motor vehicle which is insured by a liability carrier who becomes insolvent.[5]

Moreover, we note the pertinent parts of the definition of "uninsured motor vehicle" in the State Farm Insurance policy:

**5.** 40 P.S. § 2000(b) states:
For the purpose of this coverage the term "uninsured motor vehicle" shall be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of the insured within the limits specified because of insolvency.

... a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged ... a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or is or becomes insolvent;

Thus, the appellee's eligibility is dependent upon the definition given the term "insolvent." Unfortunately, neither the Uninsured Motorist Act, nor the insurance policy specifies what definition was contemplated. Thus, it will be necessary to turn to other sources.

One standard which can be excluded is the definition of "insolvent insurer" set forth in the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.103(6). This standard would required the insurer be declared "insolvent ... by a court of competent jurisdiction of the insurer's domiciliary state ..." This definition was explicitly rejected in *Henderson v. State Farm Mutual Insurance Company, supra.*

Another definition derived from Article V of the Insurance Company Law of 1921, as amended 40 P.S. § 221.3, has already been applied tangentially, herein, in that it was the basis of the Insurance Commissioner's summary order against Safeguard in May, 1979.[6] Based on this definition

**6.** 40 P.S. § 221.3 defines "insolvency" as:

(1) For an insurer issuing only assessable fire insurance policies; (i) the inability to pay any obligation within thirty days after it becomes payable, or (ii) if an assessment be made within thirty days after such date, the inability to pay such obligation thirty days following the date specified in the first assessment notice issued after the date of loss pursuant to section 808 of the act of May 17, 1921 (P.L. 682, No. 284), known as "The Insurance Company Law of 1921"

(2) For any other insurer the inability to pay its obligations when they are due, or whose admitted assets do not exceed its liabilities plus the greater of (i) any capital and surplus required by law for its organization or (ii) its authorized and issued capital stock. For any insurer licensed to do business in this Commonwealth as of the effective date of this act which does not meet this standard, the term

the Commissioner issued an order finding Safeguard to be insolvent and precipitating further proceedings under Article V for its Involuntary Dissolution.

It is interesting to note the effect of the Insurance Commissioner's order. Under § 221.10(d):

Any suspension order made by the commissioner under the provisions of subsection (a) shall prohibit issuance of policies, transfers of property, and payments of money without prior written approval of the Commissioner... From the date of such suspension on the ground that the insurer is insolvent, or is in such condition that its further transactions of business will be hazardous financially to its policyholders, creditors, or the public, no action at law or equity shall be commenced or prosecuted nor shall any judgment be entered nor shall any execution or attachment be issued or prosecuted against the suspended insurer, or against its property, in any court of this Commonwealth; Provided, that if such suspension order be vacated by the Commonwealth Court for the reason that the suspended insurer is no longer insolvent ... these restraints upon legal process regarding the insurer shall thereafter cease to be operative.

Thus, the order of May, 1979 had the effect of suspending all legal proceedings against Safeguard. Consequently, any action by appellee Bullock was against the tortfeasor Shields *sans* his insurer, Safeguard. For all practical intents and purposes Shields was uninsured. Thus, the appellees were eligible at that point to advance a claim under the uninsured motorist coverage in the policy with State Farm.

Our decision is supported by both the language of the Uninsured Motorist Act and the policy behind it. Subsection (d) of the Act provides that:

"insolvency" shall mean for a period not to exceed three years from the effective date of this act that it is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities plus any required capital contribution ordered by the commissioner under provisions of the insurance law. (Footnote omitted).

See also *Sheppard v. Old Heritage Mutual Insurance Company,* 492 Pa. 581, 425 A.2d 304 (1980).

(d) In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, *including the proceeds recoverable from the assets of the insolvent insurer.* Whenever an insurer shall make payment under the coverage required by this section, which payment is occasions by an insolvency, such insurer's right of recovery or reimbursement shall not include any rights against the insured of said insolvent insurer, but *such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver,* and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent insurer might have had if the insured of the insolvent insurer had personally made the payment. (Emphasis added).

This section of the Act contemplates that an insurer paying benefits pursuant to uninsured motorist coverage will have a subrogation right against the insolvent insurer or its receiver. "Receiver" is defined in § 221.3 as "receiver, liquidator, rehabilitator, or conservator as the context requires." Surely, the Commissioner, after the issuance of a summary order under § 221.10, is considered to be a "receiver" because of the broad powers he enjoys. Therefore, the paying insurance carrier would be able to exercise its subrogation rights against the insolvent insurer, or the Commissioner (or his designate) as "receivers."

Moreover, we do not think the legislature intended to freeze the injured party's right to recover against some party pending the completion of lengthy hearings and determinations regarding the fate of the insolvent insurer; whether it is ultimately rehabilitation or dissolution. This is especially true since the Uninsured Motorist Act puts a time limitation on an insured's ability to recover. Subsection (c)

provides that: "An insured's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within six years after the accident." If we were to define "insolvency" as occurring at some later point, such as after a judicial adjudication, insureds could forfeit their right to recover because of the lapse of time. We do not believe such a result was intended.

■ The policy behind the Uninsured Motorist Act also supports our decision. A liberal construction of the statute requires us to find coverage unless strong legal or equitable considerations to the contrary are present. *Marchese v. Aetna Casualty and Surety Company,* 284 Pa.Super. 579, 426 A.2d 646 (1981); *Sands v. Granite Mutual Insurance Company,* 232 Pa.Super. 70, 331 A.2d 711 (1974). We find no such considerations in the present case.

■ Finally, as previously stated, State Farm made no attempt to define "insolvency" in the policy. It is a well established rule that any ambiguous term in an insurance policy must be construed favorably to the insured. *Garber v. Travelers Insurance Company,* 280 Pa.Super. 323, 421 A.2d 744 (1980); *Miller v. Prudential Insurance Company of America,* 239 Pa.Super. 467, 362 A.2d 1017 (1976). Since "insolvency" is a term subject to multiple interpretations of varying degrees of strictness it cannot be denied that it is ambiguous. We therefore apply that definition most favorable to the insured, *Henderson v. State Farm Mutual Insurancy Company, supra.* Thus, in determining whether an insurer is insolvent for purposes of 40 P.S. § 2000(c), we find that the definition found in 40 P.S. § 221.3 is applicable.

Accordingly, we find the Court below was correct in confirming the award of arbitrators finding the appellees eligible for uninsured motorist coverage.

Order affirmed.

PRICE, J., did not participate in the consideration or decision of this case.