## Nationwide Insurance Company v. Frazier

*William C. Kuhn*, for plaintiff.
*Richard W. Epstein*, for defendant.

ACKER, *P.J.*, May 8, 1986—We have for consideration two petitions. The first, by Nationwide Insurance Company, requests that we vacate the award of $90,000 to the estate of Lynda Sue Frazier. The second, by Harold Ronald Frazier, administrator of the estate of Lynda Sue Frazier, deceased, requests that we confirm the arbitration award.[1]

Decedent Lynda Sue Frazier, a minor, died as a result of injuries suffered in a vehicle collision in Pymatuning Township, Mercer County, Pa., on May 1, 1984. She was age 15 and was a passenger in a stolen vehicle driven by Herbert J. Houston at the time of the collision. There was no competent evidence presented to the arbitrators that she was the thief, or had knowledge of the theft, of the vehicle. Her death was the result of a high-speed chase by police through the City of Hermitage and the Township of Pymatuning in Mercer County. Al-

---

1. By statute the award of an arbitrator in a nonjudicial arbitration (here present) is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing, or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

As amended, October 5, 1980, P.L. 693, §501(a); 42 Pa.C.S. §7341.

though decedent Lynda Sue Frazier had been operating the vehicle, Herbert J. Houston took over the operation during the police chase.

Lynda Sue Frazier left her mother's residence with her mother's permission on the day of the accident to accompany Herbert Houston. At the time of the accident her parents had been living separate and apart from each other from February 10, 1982. Decedent's mother, Harriet Frazier, resided at 3095 East State Street, in the City of Hermitage. Her father, H. Ronald Frazier, resided at 122 Baker Avenue, also in the City of Hermitage.

There was no applicable insurance coverage on the vehicle in which Lynda Sue Frazier was riding at the time of the accident. Her adminstratrix, therefore, petitioned for uninsured motorists' coverage under insurance policies issued by plaintiff Nationwide Insurance Company. That company insured both decedent's mother and, by separate policies, decedent's father. The insurance coverage as to the mother through Nationwide provided uninsured motorists' coverage of up to $15,000 for the injury or death of a person which occurs within the policy coverage provisions. These extended to the named insured and "relatives living in your household." However, page 10 of the policy contained an exclusion stating that it did not apply to the use of any vehicle by an insured without permission of the owner. Therefore, there was no coverage for Lynda Sue Frazier as to her mother's policy with Nationwide.

Harry Ronald Frazier, decedent's father, however, was also insured with Nationwide and was the owner of a Nationwide business auto policy which provided a $30,000 single-incident-limit coverage

for the injury or death of one person which occurs within the policy coverage provisions.[2]

The uninsured motorists' coverage of the father with Nationwide through his business auto policy provides coverage for himself or any family member. The term *family member* is defined in the policy: "Family member means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." Excluded by the policy, however, is "Anyone using a vehicle without a reasonable belief that the person is entitled to do so."

At an arbitration hearing, Nationwide took the position that the uninsured motorists' policy of the father's business auto policy did not extend coverage to the estate of Lynda Sue Frazier. She, of course, was not a named insured on the policy, but even more, it was contended she was not a resident of her father's household. The arbiters' decision reads as follows:

"The board finds that decedent was a resident of both households and, therefore, entitled to coverage under father's policies because the mother's policy excludes coverage where the vehicle was being used without the consent of the owner. The father's policy provides for an exclusion, (4) 'Anyone using the vehicles without a reasonable belief that the person is entitled to do so.' The board believes that there is no evidence that she had a belief that the car was stolen.

---

2. The policy of the father with Nationwide known as the "Nationwide Business Auto Policy" covered seven vehicles. Thus, the possibility of "stacking" coverage under the father's policy exists. See Estate of Rosato v. Harleysville Mutual Insurance Company, 328 Pa. Super. 278, 476 A.2d 1328 (1984).

The board finds that stacking the coverage is permitted under the father's policy.

The board awards $90,000 to the estate of Lynda Sue Frazier."

The error claimed is not the stacking of the policies, nor the amount of the award, but the conclusion that the child was a resident of both households. We hold the award was proper.

The parties agree that common-law rules of arbitration apply. See, e.g., Bromley v. Erie Insurance Exchange, 322 Pa. Super. 542, 469 A.2d 1124 (1983). 42 Pa.C.S. §7341.

Nationwide contends, however, that the conclusion that Lynda Sue Frazier was a resident of two households is so contrary to the law and facts as to constitute an unjust, inequitable and unconscionable decision and award. Further, that such a conclusion is so contrary to law and facts as to impart irregularity, bad faith, ignorance of the law and indifference to the justice of the results so as to deny Nationwide substantive due process.

Despite a consent decree of our court placing primary custody in decedent's mother and partial custody in decedent's father, we refuse to accept plaintiff's position that the child was not a member of the father's household as well as the mother's at the time of the fatal accident.[3]

Under common-law arbitration principles, the arbiters are the final judges of both the law and fact. Allstate Insurance Company v. Fioravanti, 451 Pa. 108, 299 A.2d 585 (1973); Hassler v. Columbia Gas Transmission Corp., 318 Pa. Super. 302, 464 A.2d

---

3. By statutory authority a common pleas court in Pennsylvania may enter a shared-custody order when it finds it to be in the best interests of the child. Act of November 5, 1981, P.L. 322, §5; 23 P.S. §1005.

1354 (1983); Greenspan v. United Service Automobile Association, 324 Pa. Super. 315, 471 A.2d 856 (1984).

An *irregularity* which requires reversal of the common-law arbitration award refers to the process employed in reaching results achieved by the arbiters, not the result itself. Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Associates, 328 Pa. Super. 357, 477 A.2d 482 (1984). In an appeal from a common-law arbitration, in order to prevail appellant must show by clear, precise and indubitable evidence that he was denied a hearing, or there was fraud, misconduct, corruption or some other irregularity of that nature on the part of the arbiter which caused the arbiter to render an unjust, inequitable, or unconscionable award. Chervanak Keane & Co., Inc. v. Hotel Rittenhouse Associates, Inc., supra. Allstate Insurance Company v. Fioravanti, 451 Pa. 108, 299 A.2d 585 (1973), cited by plaintiff, holds at most that one can conceivably hypothecate a factual situation requiring relief. This does not support plaintiff's contention that relief is required in this case. For even if this case was before this court for first consideration, there would be no right to refuse coverage.

Despite the description given by Nationwide to the conclusions of the fact and law[4] by the arbiters that Lynda Sue Frazier was a resident of her father's household, Nationwide's basic contention is that the deceased girl was not a member of her father's household.

The parties in this case agreed to become bound by the common-law rules of arbitration. An arbiter's

---

4. Nationwide describes the conclusion as an irregularity of bad faith, ignorance of the law, corrupt and irregular. We find none of these to be present.

mere misapplication of the law or improper finding of fact is not in itself correctable on appeal. See Runewicz v. Keystone Insurance Company, 476 Pa. 456, 383 A.2d 189 (1978); Gentile v. Weiss, 382 Pa. Super. 475, 477 A.2d 544 (1984); Cargill v. Northwestern National Insurance Company, 316 Pa. Super. 139, 462 A.2d 833 (1983). Indeed, even if the Pennsylvania appellate courts had construed the same language in a manner contrary to that of the arbiters, the latter would prevail. LaCourse v. Firemen's Insurance Company of Newark, New Jersey, 756 F.2d 10, 13 (3d Cir. 1985). In this case all parties received a full and fair hearing before three impartial arbiters.[5]

Their decision will not be upset.

Assuming arguendo, that this court had for decision the same initial determination made by the arbiters, we would have concluded as they did that coverage was required. The estate's claim was based on uninsured motorists' provisions of separate automobile insurance policies issued to each of Lynda Frazier's parents. Under the Pennsylvania No-fault Motion Vehicle Insurance Act, 40 P.S. §1009.101 et seq. (repealed),[6] all owners of motor vehicles were required to maintain first-party liability insurance. 40 P.S. §1009.104(a). Every policy of insurance issued under the No-Fault Act was required to provide uninsured motorists' coverage. 31 Pa. Code §6611. The No-fault Act provided for insurance coverage including uninsured motorists' benefits for every insured victim of an uninsured motorist, either through a policy of insurance or

5. One of the arbiters, Thomas T. Frampton, has subsequently become a judge of our court of common pleas.

6. The accident in this case occurred prior to the repeal of the No-fault Insurance Act in Pennsylvania.

through the No-fault Assigned Claims Plan. See 40 P.S. §1009.108(a); 40 P.S. §1009.204(a); Tubner v. State Farm Mutual Auto Insurance Company, 496 Pa. 215, 436 A.2d 621 (1981); Prudential Property & Casualty Insurance Company v. Falligan, 335 Pa. Super. 195, 484 A.2d 88 (1984).

If a court is to err in ascertaining the legislative intent behind the No-fault Act in close doubtful cases, it should do so or in favor of extending coverage [sic]. Steppling v. Pennsylvania Manufacturers Association Insurance Company, 328 Pa. Super. 419, 477 A.2d 515 (1984). The purpose of the Uninsured Motorists' Act, 40 P.S. §2000, is to protect nonculpable victims from negligent, financially irresponsible drivers. Harleysville Mutual Insurance Company v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968); Bankers v. State Farm Mutual Auto. Insurance Company, 216 Pa. Super. 163, 264 A.2d 197 (1970); State Farm Insurance Company v. Bullock, 316 Pa. Super. 475, 463 A.2d 463 (1983).

Every automobile policy issued in Pennsylvania required that there be included uninsured motorists' coverage pursuant to the provisions of the Uninsured Motorists' Act and Insurance Department regulations. 31 Pa. Code §66.1-104(a).[7]

---

7. The No-fault Act was enacted 11 years after passage of the Uninsured Motorists' Act. There is no explicit reference to the Uninsured Motorists' Act in the No-fault Act. nevertheless, both statutes deal with compensation for losses from injuries occurring in connection with motor vehicles and the obligation of the motor vehicle owners to obtain insurance, as well as the obligation of motor vehicle insurers who issue policies in Pennsylvania. Thus, if possible, the two acts are to be construed together. 1 Pa.C.S. §1932; Johnson v. Travelers Insurance Company, 343 Pa. Super. 560, 495 A.2d 938, 941, n. 6 (1985). See Tucci v. State Farm Insurance Company, 503 Pa. 447, 469 A.2d 1025 (1983), for a discussion of the interrelationship between the two acts.

To accomplish the objectives of the Uninsured Motorists' Act in providing protection to innocent victims, the act is to be construed liberally. Harleysville Mutual Insurance Company v. Blumling, supra; Sands v. Granite Mutual Insurance Company, 232 Pa. Super. 70, 331 A.2d 711 (1974); Novoseller v. Royal Globe Insurance Companies, 317 Pa. Super. 217, 463 A.2d 1163 (1983). Construction of statutes requires a liberal interpretation designed to find coverage unless strong legal or equitable considerations to the contrary are present. State Farm Insurance Company v. Bullock, 316 Pa. Super. 483, 463 A.2d at 466-67 (1983), and cases cited therein. The statute's underlying policies of construction do require, however, that the insurer's obligation to the insured arise totally out of the terms of the contract of insurance. Greenspan v. United Auto Association, supra; Boyle v. State Farm Mutual Insurance Company, 310 Pa. Super. 10, 456 A.2d 156, 159 (1983).

The controlling issue in this case was whether Lynda Sue Frazier was an "insured" under her father's business auto policy.[8]

"Insureds" included the named insured and any family member under the father's policy. Family member is defined as "a person related to you by blood, marriage, or adoption who is a resident of your household including a ward or foster child."

Decedent's parents were permanently separated on February 10, 1982, when the mother left the

---

8. The policy of the father excluded coverage to "anyone using a vehicle without a reasonable belief that the person is entitled to do so." From testimony produced to the arbiters, the car in question was stolen. There was no direct evidence that Lynda Sue Frazier knew or should have known the vehicle was stolen. The exclusion in the father's policy was, therefore, inapplicable.

family domicile and established a new, separate residence at 3095 State Street in the City of Hermitage. The father filed for divorce on April 11, 1983. A decree in divorce was entered on June 27, 1983. On August 24, 1983, we entered an order placing the child in the custody of the mother with partial custody in the father every other weekend. The parties, however, did not strictly comply with the agreement. The arbiters heard testimony that the child spent approximately five days per week during the winter months at the father's house and two or three days per week during the summer months at his house. The school records identified the child as a resident of 3095 State Street, her mother's address. She did, however, have her own room at both residences and kept clothes and cosmetics at both residences. Her 10-speed bicycle was at her father's house. Her father claimed her as a dependent for income tax purposes. We believe this to be adequate testimony to support the conclusion that Lynda Sue Frazier was a resident of both households.

It is well established that any ambiguity in terms in an insurance policy must be contrued favorably to the insured. State Farm Insurance Company v. Bullock, supra; D'Allessandro v. Durham Life Insurance Company, 503 Pa. 33, 467 A.2d 1303 (1983); Patton v. Patton, 413 Pa. 566, 198 A.2d 578 (1964).

A provision of an insurance policy is regarded as ambiguous if reasonably intelligent men would honestly differ as to its meaning. Patton v. Patton, supra. Additionally, in determining whether ambiguity exists, the courts may consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question. Celley v. Mutual Benefit Health & Accident Association, 229 Pa. 475, 324 A.2d 430 (1974).

Nationwide in this case had the opportunity to clearly define the term "resident of your household," but failed to do so.[9]

Where several courts have reached opposite conclusions in construing nearly identical language, such conflict itself leads to the conclusion that the provision at issue is susceptible to more than one interpretation. Cohen v. Erie Indemnity Company, 288 Pa. Super. 445, 451, 432 A.2d 596, 599 (1981). The failure of the father's Harry Ronald Frazier's, business auto policy to adequately define the ambiguous phrase "resident of your household" re-

---

9. There are several lower court decisions construing similar language. Miller v. U.S.F.&G., 28 D.&C.3d 389 (1983) (the claimant was a resident in both parents households); Kieffer v. Nationwide Mutual Insurance Company, 7 D.&C.3d 293, 297 (1978) ("We are not prepared to say for present purposes that a person may be a member of only one household at a time"); Teetsel v. Nationwide Mutual Insurance Company, 37 D.&C.2d 246, 251 (1965) (mere temporary absence from a household does not mean that a person is not a resident thereof); Baigis v. Harleysville Mutual Insurance Company, 15 D.&C.3d 317 (1980) (a child may be a resident in custody of foster parents and also a resident in the custody of a child welfare agency simultaneously); Pursell v. Allstate Insurance Company, 570 F. Supp. 1263 (E.D., Pa. 1983), affirmed 751 F.2d 377 (3d Cir. 1984) (son was a resident of parent's household even though he actually lived in a trailer separate and apart from his parent's home). Contrast, Stewart v. Auto Underwriter's Company, Inc., 54 D.&C.2d 62 (1971) ("Resident" must be actually living in the same household with the intent that it be his permanent abode); King v. Allstate Insurance Company, 85 Lackawanna 39 (1984) (in a divorce situation, child is not a resident of the noncustodial parent's household); Ohio Casualty Insurance Company v. Prudential Insurance Company of America, 84-0371, Fed. Dist. Ct. (M.D., Pa. April 11, 1985) cited by plaintiff in the instant case, son is not a resident of the noncustodial parent's household where the parent's assumption of parental duties consists of payment of financial support.

quires that it be construed most strongly in favor of decedent's estate. Krager v. Foremost Insurance Company, 304 Pa. Super. 390, 450 A.2d 736 (1982).

Even if the terms are not considered ambiguous, we find that consonant with the equitable principles underlining the No-fault Act and the Uninsured Motorists' Act, the arbiters could properly have held, as they did, that Lynda Sue Frazier was a resident of both her parents' households. The concept of children necessarily belonging to but one household has long since passed in our society and our law. The insurance policy itself in this case recognizes that a child may be foster child in the home of the insured and, therefore, afforded coverage. We know from experience that foster children frequently come from homes where they have both mothers and fathers and are but temporarily placed in a foster setting to be returned to their parents as soon as practicable. Indeed, the courts regularly to make a determination [sic] of whether the children can be returned to their parents' home.

Plaintiff Nationwide Insurance Company relies upon Krager v. Foremost Insurance Company, supra. We conclude it to be of more benefit to the defense. There, a 54-year-old man, Clifford Krager, spent six months of each year living with his mother in Pennsylvania. The remaining six months he occupied a mobile home in New York State. He was injured at his mother's home when he was struck by a motorcycle while riding a garden tractor. It was held that there was no coverage under the homeowner's policy for his mobile home in New York State. This was not decided on residence, but rather that the accident was not incidental to the maintenance of his mobile home. It was concluded that he was a resident of his mother's household and that, therefore, under her homeowners' policy, coverage

was afforded. Implicit in the Krager case was that he was a resident of both his own household in New York and his mother's household in Pennsylvania. See also Roach v. Aetna Life & Casualty Company, 132 P.L.J. 306 (1984).

Finally, Nationwide contends that as a matter of law, Lynda Sue Frazier could not be a resident of two households at one time. The insurance company focuses on the term *residence* rather than the term *household*. *Resident* is a transitory term. That is, a person is a resident of wherever he happens to be physically present at a particular moment. Krager v. Foremost Insurance Company, supra. The term *household* is much broader encompassing all members of a family who live together. Hoff v. Hoff, 132 Pa. Super. 431, 1 A.2d 506 (1983); Krager v. Foremost Insurance Company, supra; Keiffer v. Nationwide Mutual Insurance Company, supra ("It seems to us, however, that it would be an unusual case in which a close relative who spent an appreciable amount of time in a dwelling with other relatives would not properly be regarded as a member of the household. A child who regularly spends time in the parental home would seem clearly to us to be a member of the household."); Teetsel v. Nationwide Mutual Insurance, supra ("The law does not require that a member be physically in the household in order to be a resident thereof."); Heusel v. Nationwide Mutual Insurance Company, 479 F. Supp. 274 (M.D. Pa. 1979), affirmed 628 F.2d 833 (3 Cir. 1980) (Daughter is a *resident* of her parents' household while serving in the Coast Guard.)

Lynda Sue Frazier spent some days of the week at her father's home and other days of the week at her mother's home. To conclude that Lynda Sue Frazier could only be resident in one household and the household in which she was a resident was depend-

ent upon what day of the week it was, would be in opposition to the principles of the No-fault Act and the Uninsured Motorists' Act to provide benefits for innocent victims for acts of negligence of others. Wherefore, we enter the following

## ORDER

And now, this May 8, 1986, it is hereby ordered and decreed that the petition of Nationwide Insurance Company to vacate the award of the arbiters is denied.

## ORDER

And now, this May 8, 1986, it is ordered and decreed that the petition to confirm arbiter's award is granted.