510 A.2d 787

**Arthur E. McMULLIN, Sr., Appellant**

v.

**Frank J. DALLAGO, III, Frank J. Dallago, II, and Aetna Life & Casualty Company a/k/a Aetna Casualty & Surety Company.**

Superior Court of Pennsylvania.

Argued March 11, 1986.

Filed June 2, 1986.

528

Ralph D. Friedman, Abington, for appellant.

David W. Moneymaker, Wayne, for appellees.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WICKERSHAM, Judge:

Arthur E. McMullin appeals from the order of the Court of Common Pleas of Montgomery County sustaining appellee Aetna's amended preliminary objections and dismissing Count II of appellant's complaint and transferring venue for Count I of the complaint from Montgomery County to Berks County.

Shortly before midnight on August 20, 1982, appellant McMullin was walking along Pennsylvania Route 61 in Leesport, Berks County, when he was struck by two motor vehicles. Appellee Frank J. Dallago, III was the operator of one of the vehicles involved. His father, Frank J. Dallago, II, was the owner of the car, and was the named

insured in an automobile insurance policy issued by appellee Aetna Life & Casualty Company ("Aetna"). The other motorist who struck appellant fled the scene of the accident and remains unknown. There is no dispute that appellant was uninsured at the time of the accident.

On August 10, 1984, appellant filed a two-count complaint against appellees. In Count I, appellant sought to recover damages in tort from the Dallagos. In Count II, appellant sought uninsured motorist benefits from Aetna, on the basis that he was an uninsured pedestrian, that the Dallagos' policy with Aetna included uninsured motorist coverage, and that since one of the cars that struck him was unidentified, he was entitled to uninsured motorist benefits from Aetna. Aetna filed preliminary objections to Count II, stating that, absent a contract between Aetna and appellant, Aetna was under no obligation to compensate appellant for damages allegedly inflicted by the unidentified vehicle. Aetna also objected to venue in Montgomery County. On June 27, 1985, the lower court granted Aetna's amended preliminary objection in the nature of a demurrer, striking Count II of the complaint. Aetna's objection concerning venue was also sustained and the remainder of the case, i.e., Count I, was transferred to Berks County. It is to this order that appellant filed this timely appeal.

Appellant raises two issues before us:

Did the lower court err in failing to find that an insurer providing basic los[s] benefits under the No-fault Act to an uninsured pedestrian struck by a hit and run vehicle must also provide uninsured motorist coverage for said victim?

Did the lower Court err in issuing an order changing venue pursuant to Pennsylvania Rule of Civil Procedure § 1006(c) which provides that in a case of joint and several liability, the action can be brought in any county in which one of the Defendants can be served?

Brief for Appellant at 4.

The primary issue raised—whether the lower court erred in holding that appellant was not entitled to uninsured

motorist benefits from Aetna—is one of first impression before this court. Appellant concedes in his brief that if we affirm on this point, then his other issue regarding the transfer of venue will be without merit and venue would properly be transferred to Berks County.

Our scope of review is well-established.

The scope of appellate review of a challenge to an order sustaining preliminary objections in the nature of a demurrer is, of course, well settled:

> All material facts set forth in the complaint as well as all inferences reasonably deductible therefrom are admitted as true for [the purposes of this review.] ... The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible.... Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Vann v. School District of Philadelphia*, 348 Pa.Super. 383, 384, 502 A.2d 260, 261 (1985).

We, therefore, accept as true for the purposes of our review, that appellant was injured while walking along the highway as the result of his being struck by both the insured Dallago vehicle and the presumably uninsured, unidentified vehicle. The question before us is whether the Dallago's insurer, Aetna, must pay uninsured motorist benefits in addition to basic loss benefits.

After careful consideration of the record, the briefs of the parties, and the applicable law, we find the excellent opinion of the Honorable Horace A. Davenport to be persuasive. We rely heavily on his opinion in the following discussion.

The stated purpose of the Pennsylvania No-fault Motor Vehicle Insurance Act[1] was "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.*, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

P.S. § 1009.102(b). To accomplish this purpose, the Act required every vehicle registered or operated in Pennsylvania to be insured, either by a policy of insurance, or by self-insurance. 40 P.S. § 1009.104. This insurance had to provide for the payment of basic loss benefits [2] *and* for the payment of statutorily-designated sums which the owner or authorized operator may be liable to pay as damages for personal injury to any one person and for property destruction. 40 P.S. § 1009.104(a); *Tierney v. Pennsylvania Assigned Claims Plan*, 319 Pa.Super. 299, 466 A.2d 168 (1983). Thus, an owner or authorized operator, driving an insured vehicle, who was injured in an automobile accident was to be paid basic loss benefits by his insurer whether he was at fault or not. At the same time he was covered up to the limits of his insurance policy for any tort liability he may have incurred. 40 P.S. § 1009.111.

In addition to the coverage required by section 104(a), uninsured motorist coverage was also required. 31 Pa.Code §§ 66.1–104(a); *Tubner v. State Farm Mutual Automobile Insurance Company*, 496 Pa. 215, 436 A.2d 621 (1981). *See also* 40 P.S. § 2000(a). This uninsured motorist coverage ensured that innocent victims would be able to recover the damages they would have received had the uninsured tortfeasor maintained liability insurance. *Providence Washington Insurance Company v. Rosato*, 328 Pa.Super. 290, 476 A.2d 1334 (1984). However, before recovery of uninsured motorist benefits was possible, it had to be determined that the owner or operator of the uninsured vehicle was the legal cause of the insured's physical injuries. *State Farm Mutual Automobile Insurance Company v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978). Generally speaking then, where an uninsured driver was found liable for an insured victim's injuries, the insured could recover damages

---

**2.** "Basic loss benefits" were benefits provided for the "net loss sustained by a victim" and entailed medical expenses, work loss sums, replacement services costs and survivors losses. 40 P.S. §§ 1009.103 and 1009.202.

in tort from *his own* insurer pursuant to the uninsured motorist provisions of the No-fault Act.[3]

Therefore, it is clear that under the No-fault Act, an insured individual who was injured in a motor vehicle accident would always receive basic loss benefits *and,* where he could prove entitlement, a certain amount of damages in tort. Until recently however, this was not true where an *uninsured* person was injured in an automobile accident. An uninsured individual was assured of receiving basic loss benefits either from an insured vehicle involved in the same accident,[4] or if none of the parties was insured, then under the assigned claims plan set out in 40 P.S. § 1009.108.[5] What was not so certain was whether an uninsured individual was also guaranteed the recovery of at least some damages in tort.

This question came before the Pennsylvania Supreme Court in *Tubner v. State Farm Mutual Automobile Insurance Company, supra.* In *Tubner,* an uninsured individual was killed when the uninsured car in which he was a passenger was hit by an uninsured motorist. No policy of basic loss insurance was applicable to the uninsured victim and a claim had to be made with the No-fault Assigned

---

**3.** In this situation, of course, the insurance company was still responsible for the insured's basic loss benefits in addition to the uninsured motorist benefits. 40 P.S. § 1009.204(a)(2).

**4.** Sec. 1009.204(a)(4) provided that the security for payment of basic loss benefits to an uninsured individual was the "security covering any motor vehicle involved in such accident." It was assumed that this section would cover pedestrians, bicyclists, etc., who did not own or operate a vehicle in Pennsylvania and so were not required to carry no-fault insurance.

**5.** Sec. 1009.204(a)(5) held that where a victim does not come under any of the preceding paragraphs concerning payment of basic loss benefits, then the applicable security was the assigned claims plan. A typical situation involving the assigned claims plan was where an accident occurred between two uninsured vehicles. Since neither party had any security, they had to apply to the assigned claims bureau, which would assign each claim for no-fault benefits to a participating insurer. It was mandatory under the No-fault Act for each insurer providing basic loss insurance in Pennsylvania to participate in the assigned claims bureau and the assigned claims plan. 40 P.S. § 1009.108.

Claims Plan. Eventually, defendant State Farm was appointed to handle Tubner's claim. State Farm paid basic loss benefits, but refused to provide uninsured motorist benefits.

The supreme court ordered State Farm to pay the plaintiff uninsured motorist benefits, stating:

> Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies*, and because *every* policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage*, the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder.

*Id.* 496 Pa. at 219–220, 436 A.2d at 623 (emphasis in original) (footnote omitted). Thus, after *Tubner*, it appeared that, in most instances, an uninsured individual injured through the fault of another uninsured individual could receive both basic loss benefits *and* uninsured motorist benefits under the assigned claims plan, with the latter benefits covering the victim's general tort damages.[6] However, the situation which arose in *Prudential Property and Casualty Insurance Company v. Falligan*, and its companion case, *Donovan v. Keystone Insurance Company*, 335 Pa.Super. 195, 484 A.2d 88 (1984), revealed that there were still gaps in the system.

In *Falligan*, an uninsured pedestrian was struck and injured by an *insured* vehicle driven by an *uninsured* operator who was driving the car without the owner's

---

6. We recognize that not *all* uninsured individuals are entitled to receive both basic loss benefits and uninsured motorist benefits under the assigned claims plan. For example, we have held an uninsured owner-operator of a motor vehicle, in contrast to the uninsured passenger in *Tubner*, may not recover uninsured motorist benefits from an assigned claims plan insurer. *See Aagesen v. Travelers Cos.*, 346 Pa.Super. 45, 498 A.2d 1363 (1985); *Johnson v. Travelers Ins. Co.*, 343 Pa.Super. 560, 495 A.2d 938 (1985). We note, however, that whether an uninsured owner-operator may recover uninsured motorist benefits is currently before our court *en banc* in the cases of *Brown v. Travelers Insurance Co.*, J. E1002/86 and *Armstrong v. Pennsylvania Assigned Claims Plan*, J. E1003/86.

permission. The victim was paid basic loss benefits as required under 40 P.S. § 1009.204(a)(4), but because the unauthorized driver of the car was not insured, the victim could not recover his general damages in tort from that source. The plaintiff therefore sought to secure uninsured motorist benefits from the vehicle's insurer. The defendant insurer denied coverage for uninsured motorist benefits on the ground that its policy of insurance issued to the automobile owner was without legal effect since the automobile was being operated at the time of the accident without her permission.

Our court relied heavily on *Tubner* in dismissing this objection and concluded:

> We perceive no distinction in status between an uninsured victim who must look to the applicable security for coverage of his claim to uninsured motorist benefits under § 1009.204(a)(4) and an uninsured victim who must look to the assigned claims plan under § 1009.204(a)(5).... [W]e cannot accept Prudential's disclaimer argument since a claimant's right to uninsured motorist benefits is not contingent upon the status of the driver of the insured vehicle.

*Id.,* 335 Pa.Superior Ct. at 202–03, 484 A.2d at 92 (footnote omitted). Thus *Falligan* makes it clear that *any* uninsured victim will receive both basic loss benefits *and* damages in tort whenever the situation so warrants.

From the *Tubner* and *Falligan* decisions, it is obvious that the courts were concerned with the concept of "maximum feasible restoration".[7] In both cases, maximum feasible restoration was not possible because both victims and tortfeasors were uninsured. Plaintiffs could recover basic

7. 40 P.S. § 1009.102(a) stated in pertinent part:

(a) Findings.—The General Assembly hereby finds and declares that:

\*   \*   \*   \*   \*   \*

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce; ...

loss benefits, but not their damages in tort. Therefore, in order to effect maximum feasible restoration, the courts in *Tubner* and *Falligan* awarded uninsured motorist benefits to the victims.

These were not arbitrary awards, however, made simply in the interests of justice and equity. They were the results of carefully reasoned decisions. *Tubner* and *Falligan* do not alter the purpose behind the payment of uninsured motorist benefits. An uninsured victim will receive uninsured motorist benefits where that victim cannot recover damages from a standard source, such as an operative policy of basic loss insurance. Uninsured motorist benefits will not accrue simply because an uninsured vehicle or driver is involved in an automobile accident.

In contrast to the situations in *Tubner* and *Falligan*, where both the victims and the tortfeasors were uninsured, the victim in the instant action was uninsured, but was struck by an insured vehicle. Appellant therefore falls, like the victim in *Falligan*, under the terms of 40 P.S. § 1009.-204(a)(4). That is, the applicable security for appellant's basic loss benefits is Dallago's insured automobile and therefore, its insurer, i.e. Aetna. As long as appellant can prove fault on the part of Mr. Dallago, the driver, he is assured of recovering damages in tort up to the limits of the policy issued by Aetna, depending upon the amount of any award. In fact, this is the purport of Count I of appellant's complaint. This is not an instance where the victim has no substantive recourse to damages because the tortfeasor is an uninsured man of straw. "Maximum feasible restoration" to appellant here *is* possible since the Dallagos are covered under a policy of basic loss insurance.

Therefore, appellant's contention that, because he was also struck by a second (hit-and-run) vehicle, he is also entitled to uninsured motorist benefits under the Dallago policy issued by Aetna, would give him benefits greater than those intended by the Act. Appellant will receive basic loss benefits and may recover damages in tort, which would be paid by Aetna. To make Aetna pay uninsured motorist

benefits on top of this would be to give appellant more than is contemplated under the No-fault Act. Here, appellant is asking that Aetna be held liable for: 1) no-fault coverage; 2) tort liability coverage; and, 3) uninsured motorists coverage for the unidentified vehicle. Asking Aetna to pay twice the amount of damages it is obligated to pay under the insurance policy is totally contrary to the Act, and to the legislative policy underlying the Act. "We cannot in equity and good conscience allow [appellant] to receive more that one satisfaction for [his] injuries, by permitting [him] to be twice compensated for them at the expense of [Aetna]." *Rossi v. State Farm Automobile Insurance Company*, 318 Pa.Super. 386, 392, 465 A.2d 8, 11 (1983).[8]

■ Uninsured motorist benefits will not automatically accrue simply because an uninsured vehicle or driver is involved in an automobile accident. Rather, an uninsured victim will receive uninsured motorist benefits only where that victim cannot recover his or her damages from a standard source and where the recovery of said benefits will further the goal of "maximum feasible restoration." Such is not the case herein. Appellant is seeking double compensation from Aetna and the defendant insureds by demanding uninsured motorist benefits. We, therefore, find no error in the lower court's failure to hold that Aetna should provide uninsured motorist coverage for appellant. Thus, we affirm the court's dismissal of Count II of the complaint.[9]

Order affirmed.

WIEAND, J., concurs in the result.

**8.** It is possible that appellant may be eligible for a claim with the assigned claims bureau based on the involvement of the hit-and-run motorist, under *Tubner*, and he would then be eligible for uninsured motorist benefits from whatever insurer that bureau assigns to handle this claim. Appellant, however, cannot arbitrarily select Aetna to automatically become the assigned risk insurer under the facts of this case.

**9.** Because the lower court properly sustained Aetna's demurrer and dismissed Count II of the complaint against Aetna, there is no longer any connection with Montgomery County as required under Pa.R.C.P.

No. 1006(c). Therefore, we also affirm the transfer of the remainder
of the case to Berks County, the situs of the accident.