## West American Insurance Company v. Large

*Chester C. Corse Jr.,* for plaintiff.
*Jack E. Feinberg,* for defendant.

LIPSITT, *S.J.,* May 25, 1988 — In this action for declaratory judgment, we have before us plaintiffs' motion for summary judgment. The sole issue presented is whether it is against the public policy of this commonwealth for a clause in an automobile insurance policy to permit the insurer to set off, dollar for dollar, any uninsured motorist coverage payments to a guest passenger for liability coverage payments made to that guest passenger under the same policy. After carefully reviewing the record and considering the briefs of counsel, we conclude that this set off clause, as applied to a guest passenger, is not repugnant to public policy of this commonwealth and, therefore, plaintiffs are entitled to judgment as a matter of law.

## FACTUAL AND PROCEDURAL HISTORY

On October 20, 1983, Melanie Hurley was operating an automobile owned by her father, co-plaintiff Marvin D. Hurley, proceeding southbound on Route 209 in Mahoning Township, Carbon County, Pa. Kathryn T. Large was a passenger in the Hurley vehicle at that time.

In the process of passing a vehicle being operated by George Hoherchak, the Hurley vehicle was struck in the right rear side by the Hoherchak vehicle, causing the Hurley vehicle to go onto the other side of the road and come to rest against a stone

wall. After the Hurley vehicle had been stopped in this location for about ten seconds, it was struck by another vehicle operated by Allen Snyder, which had been proceeding northbound on Route 209. As a result of this accident, Large received severe injuries which resulted in her death.

At the time of the accident, Melanie Hurley was an insured under an automobile insurance policy, policy DPW 31-83258 P, issued to her father by co-plaintiff, West American Insurance Company. The policy provided for $25,000 in liability coverage and $15,000 in uninsured motorist coverage. At the time of the accident, Hoherchak was an uninsured motorist.

On April 23, 1984, defendant, Elizabeth J. Large, administratrix of the estate of Kathryn T. Large, filed a civil action against Hoherchak and Snyder in the Court of Common Pleas of Carbon County to no. 84-S-113, in which Marvin Hurley and Melanie Hurley were subsequently joined as additional defendants. West American was called upon to provide the Hurleys with a defense and to issue indemnity coverage under the policy. Without conceding its liability in the Large action, West American offered to pay the full amount of its liability coverage into court in exchange for a release from any further liability in the action. However, the estate refused to accept the release contending that West American's uninsured motorist coverage is also available to the estate because, at the time of the accident, Kathryn T. Large was a covered person in the Hurley vehicle and a potential joint tortfeasor, Hoherchak, was an uninsured.

West American subsequently initiated this declaratory judgment action seeking a declaration from the court that, by operation of a set off clause in the Hurley policy, once the limits of the liability

coverage under the Hurley policy have been paid to the estate, the uninsured motorist coverage is no longer available to the estate. After the pleadings were closed, plaintiffs filed the instant motion for summary judgment.

## DISCUSSION

### Violation of Carbon County Rule 211

Initially, plaintiffs contend that defendant's answer to the motion for summary judgment, and the brief in support thereof, should be dismissed for defendant's failure to comply with Rule 211 of the Carbon County Local Rules of Court. That rule provides, in pertinent part, as follows:

"When the praecipe for listing shall have been ordered by counsel for the party seeking the order, such party shall lodge with the prothonotary simultaneously his argument brief, together with a copy thereof for the court. One copy of such brief shall be served upon the attorney for the adverse party immediately thereafter. The attorney for each adverse party shall file two copies of his brief in the same office as aforesaid and shall serve one copy thereof upon opposing counsel not later than 15 days after receipt of the brief of moving counsel.

"Failure of a party to comply with the requirements of this rule pertaining to filing and serving copies of briefs shall constitute a default for which the court shall impose sanctions, including, where appropriate, dismissal of the motion. . . ." Carbon County Local Rule of Court 211. (emphasis supplied)

It is undisputed that defendant's answer and brief were filed beyond the 15 days provided by Rule 211. However, we will not dismiss defendant's answer and brief for this procedural violation. First, we find

that plaintiffs have not alleged any prejudice by virtue of the defendant's late filings. Moreover, we find that plaintiffs, by filing a reply brief to defendant's brief without obtaining leave of court to do so, have also violated a portion of Rule 211 which states that "[n]o supplemental brief or reply brief shall be filed except upon special allowance and within such time as shall be set by the court." Carbon County Local Rule of Court 211(b)(ii). Finding plaintiffs in pari delicto, we deny their request to impose sanctions upon defendant for violating Rule 211.

*Availability of uninsured motorist coverage*

Our disposition of plaintiffs' motion for summary judgment is circumscribed by Pennsylvania Rule of Civil Procedure 1035, which provides, inter alia, as follows:

"The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.C.R.P. 1035(b).

In the present case, the parties agree that, on this record, there are no genuine issues of material fact. The parties also agree that the sole legal issue before the court is the availability to the estate of proceeds from the uninsured motorist coverage, in addition to the full amount of the liability coverage, under the West American policy on the Hurley vehicle.

Plaintiffs claim entitlement to summary judgment on this issue because of the existence of the following set-off clause in the Hurley policy:

"*Part C Uninsured Motorists Coverage* — Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

"(1) Paid because of the bodily injury by or on be-

half of persons or organizations who may be legally responsible. This includes all sums paid under Part A (liability coverage).

. . .

"Any payment under this coverage will reduce the amount that the person is entitled to recover for the same damages under Part A."

Plaintiffs argue that this clause precludes the estate from recovering any monies under the uninsured motorist coverage once the estate has received the limits of the policy's liability coverage. The estate concedes that, if this clause is held to be legally valid and enforceable, there can be no recovery under both the liability and uninsured motorist coverages of the policy. However, the estate argues that, as a matter of law, the clause is void and of no effect because it is against both public policy and the legislative intent underlying the Uninsured Motorist Coverage Act, Act of August 14, 1963, P.L. 909, §1, as amended, 40 P.S. §2000.

Initially, the estate points out that the courts of this commonwealth have exercised a strong propensity to find coverage under the Uninsured Motorist Coverage Act and that the act is to be "liberally construed in order to achieve the intent of our legislature to provide monetary protection to persons who, while lawfully using the highways, have suffered injury at the hands of an irresponsible driver." (citations omitted) *Mitchell v. Prudential Property & Casualty Insurance Company*, 346 Pa. Super. 327, 332, 499 A.2d 632, 634 (1985).

Specifically, the estate relies upon *Brader v. Nationwide Mutual Insurance Company*, 270 Pa. Super. 258, 411 A.2d 516 (1979), where the Pennsylvania Superior Court declared a similar set-off clause, invoked to deny the insured uninsured motorist benefits, void as contrary to the legislative in-

tent of the act. In that case, Brader was killed when his vehicle was struck head-on by a vehicle driven by an uninsured motorist. Brader's automobile insurance policy with Nationwide provided for family compensation benefits up to $5,000, no-fault benefits up to $5,000, the first $1,500 in funeral benefits and $15,000 in uninsured motorist benefits. Nationwide paid the full amounts of coverage with respect to family compensation benefits, no-fault benefits and funeral expenses, but refused to pay the full $15,000 in uninsured benefits. *Id.*

Nationwide claimed that, pursuant to Brader's policy, any payments made under the uninsured motorist coverage would be set off by the full amount of no-fault benefits received, a total of $6,500, reducing the uninsured motorist coverage available to $8,500. *Id.* This set-off clause in Brader's policy provided as follows:

"Any amount payable to or for an insured under the uninsured motorist coverage of any policy will be reduced by the amounts of any personal injury protection benefits paid or payable, and any benefits that would have been paid or payable except for a deductible provision."

Brader's estate filed a petition for declaratory judgment claiming that the set-off clause was void as contrary to public policy, and the full $15,000 of uninsured motorist benefits was due and owing because the damages to the estate exceeded the total coverage under the liability portion of the policy. *Id.* The trial court granted the prayer of that petition holding that the set-off clause was contrary to public policy and therefore void. In affirming the trial court's action, the Superior Court held that, as a matter of law, an insured may recover under the uninsured motorist provisions of his policy the actual damages suffered which exceed the amounts col-

lected under other coverages of the same policy. *Id.*

Defendants also cite *Mitchell v. Prudential Property & Casualty Insurance Company, supra,* where, as in *Brader,* an insured sought to recover both no-fault benefits and uninsured coverage benefits under his own automobile insurance policy. The *Mitchell* court, following *Brader,* held that "in addition to basic loss benefits, an insured may collect for general damages under the uninsured motorist provision of his policy". *Id.* at 334-335, 499 A.2d at 636.

Plaintiffs argue that *Brader* and *Mitchell* are factually distinguishable from the present case because, in both of those cases, the insured was seeking to recover under the uninsured motorist provisions of his own insurance policy, a first party payment, whereas in the present case, the estate of a guest passenger, who was not an insured, is seeking to recover under the uninsured motorist provisions of someone else's insurance policy, a third party payment. We agree with plaintiffs that *Brader* and *Mitchell* are distinguishable from the present case on this basis because both the facts and holdings of *Brader* and *Mitchell* were limited to an insured's entitlement to uninsured motorist benefits under the insured's own policy.

Plaintiffs contend that, instead, the controlling case is *McMullin v. Dallago,* 353 Pa. Super. 527, 510 A.2d 787 (1986). In that case, McMullin was walking along a roadway when he was struck by two vehicles. One vehicle was operated by Dallago, whose father was the named insured in an automobile policy issued by Aetna Life & Casualty Company. The other vehicle fled the scene and remained unknown. *Id.*

McMullin filed a two count complaint against Dallago and Aetna. In Count I, McMullin sought damages in tort from Dallagos. In Count II, McMullin sought to recover uninsured motorist benefits from Aetna on the basis that the Dallagos' policy with Aetna included uninsured motorist coverage, and that since one of the cars that struck him was unidentified, he was entitled to the uninsured motorist benefits of the Dallago policy. Aetna filed preliminary objections, including a demurrer, to Count II of the complaint, contending that, absent a contract between Aetna and McMullin, Aetna was under no obligation to compensate McMullin for damages allegedly inflicted by the unidentified vehicle. The trial court granted Aetna's demurrer to Count II and struck that count from McMullin's complaint. *Id.*

In affirming the trial court's grant of the demurrer, the Superior Court opined as follows:

"As long as appellant can prove fault on the part of Mr. Dallago, the driver, he is assured of recovering damages in tort up to the limits of the policy issued by Aetna, depending on the amount of any award. In fact, this is the purport of Count I of appellant's complaint. This is not an instance where the victim has no substantive recourse to damages because the tortfeasor is an uninsured man of straw. 'Maximum feasible restoration' to appellant here *is* possible since the Dallagos are covered under a policy of basic loss insurance.

"Therefore, appellant's contention that, because he was also struck by a second (hit-and-run) vehicle, he is also entitled to uninsured motorist benefits under the Dallago policy issued by Aetna, would give him benefits greater than those intended by the act. Appellant will receive basic loss benefits and may recover damages in tort, which would be paid

by Aetna. To make Aetna pay uninsured motorist benefits on top of this would be to give appellant more than is contemplated under the No-fault Act. Here, appellant is asking that Aetna be held liable for: (1) no-fault coverage; (2) tort liability coverage; and, (3) uninsured motorists coverage for the un-identified vehicle. Asking Aetna to pay twice the amount of damages it is obligated to pay under the insurance is totally contrary to the act, and to the legislative policy underlying the act. 'We cannot in equity and good conscience allow [appellant] to re-ceive more than one satisfaction for [his] injuries, by permitting [him] to be twice compensated for them at the expense of [Aetna].' *Rossi v. State Farm Automobile Insurance Company*, 318 Pa. Super. 386, 392, 465 A.2d 8, 11 (1983). (footnote omitted)

"Uninsured motorist benefits will not automati-cally accrue simply because an uninsured vehicle or driver is involved in an automobile accident. Rather, an uninsured victim will receive uninsured motorist benefits only where the victim cannot recover his or her damages from a standard source and where the recovery of said benefits will further the goal of 'maximum feasible restoration.' Such is not the case here. Appellant is seeking double compensation from Aetna and the defendant insureds by demand-ing uninsured motorist benefits." *McMullin*, 353 Pa. Super. at 535-6, 510 A.2d at 791-792.

We find *McMullin* apposite to the present case. As has occurred here, and unlike the situations in *Brader* and *Mitchell,* McMullin sought recovery of uninsured motorist benefits not under a policy of his own, but on the policy of a third party. We note that our research has disclosed no reason for attaching any significance to the fact that the claimant in McMullin was a pedestrian while the claimant in the present case is the estate of a guest passenger.

Therefore, applying the rule of *McMullin* here, we conclude that the estate is not entitled to recover uninsured motorist benefits under the Hurley policy in addition to the limits of the liability coverage once the limits of the liability coverage have been paid.

We have found additional support for this conclusion in the recent Superior Court opinion of *Wolgemuth v. Harleysville Mutual Insurance Co.,* 370 Pa. Super. 51, 535 A.2d 1145 (1988), where that court addressed, in the posture of a declaratory judgment action, the question of "whether a guest passenger, who is a covered person under the terms of a policy of motor vehicle insurance applicable to the host vehicle, and who is injured in a single vehicle accident, may recover underinsurance benefits under the policy of insurance applicable to the host vehicle, when that passenger has already received the limits of the liability coverage under that same policy."

In *Wolgemuth,* Harleysville Mutual Insurance Company, who had issued an insurance policy on the host vehicle, had paid appellant, the guest passenger, the full amount of its liability coverage, but denied appellant's claim for underinsurance coverage pointing to the terms of the policy which provided that an insured vehicle is excluded from the definition of an "underinsured motor vehicle" for purposes of determining entitlement to underinsured motorist benefits. *Id.*

In *Wolgemuth,* appellant argued that, because the Pennsylvania legislature has made underinsurance motorist coverage mandatory, any policy provision which operates to deny a claimant underinsured benefits is against the public policy of this commonwealth. *Id.* In rejecting this argument, the Superior Court opined, albeit in dicta, as follows:

"We are not here asked to determine, and express no opinion upon, whether an insured, as that term is defined in the Motor Vehicle Financial Responsibility Law, could, under certain circumstances, recover under both the liability and underinsurance motorist provisions of a single policy. Appellant's decedent was a class two beneficiary (defined in a footnote as one whose entitlement to coverage was based solely upon her occupancy of the vehicle at the time of the accident) of the policy issued by appellee Harleysville. As a class two beneficiary, Gail M. Wolgemuth has no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for such coverage, and had no reasonable expectation as to coverage under the policy issued by appellee. To permit appellant to recover underinsured motorist benefits from appellee Harleysville under the circumstances of this case would be to convert the essentially first party coverage into third party liability coverage. As the Supreme Court of Minnesota stated in rejecting an identical argument:

" 'Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person and not the vehicle. Here, however, the decedent passengers heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsurance motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability insurance.

" 'The purpose of underinsured coverage is to protect the named insured and other additional insured from suffering an inadequately compensated injury with an inadequately insured automobile.' (citation omitted)" *Wolgemuth, supra.*

Although *Wolgemuth* factually differs from the present case in that *Wolgemuth* involved a single vehicle accident and the availability to a guest passenger of underinsured motorist coverage, whereas the present case involves a multiple vehicle accident and the availability to a guest passenger of uninsured motorist coverage, we have found no reason for treating uninsured motorist coverage differently than underinsured motorist coverage for purposes of determining their availability to a third party claimant.

The argument presented in the present case, that because the Pennsylvania legislature had made uninsured motorist coverage mandatory, any policy provision which operates to deny a claimant uninsured benefits is against the public policy of this commonwealth, is akin to the argument advanced, and rejected, in *Wolgemuth*. Moreover, in the present case, Kathryn T. Large, like Gail M. Wolgemuth, was a "class two" insured under *Utica v. Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), because her entitlement to coverage under the Hurley policy was predicated solely on her occupancy of the Hurley vehicle at the time of the accident. She had neither paid premiums nor was a specifically intended beneficiary of the Hurley policy. Accordingly, she had no contractual relationship with West American and has no basis upon which her estate could reasonable expect multiple coverage under the Hurley policy.

The language of the *Wolgemuth* decision indicates to us that it is not against the public policy of the commonwealth to limit the recovery by a guest passenger to the limits of the liability coverage of the policy on the host vehicle and thereby diminish recovery under either the uninsured or

underinsured provisions of the policy on the host vehicle by use of a set-off clause such as the one in the instant case.

Based on the holding of *McMullin* and the language of *Wolgemuth,* we hold that the set off-clause in the West American policy on the Hurley vehicle, applied to a guest passenger, is against neither the public policy of this commonwealth nor the intent of the Uninsured Motorist Coverage Act. Therefore, once the estate has received $25,000 from West American, the full amount of the liability coverage under the policy, West American has offered the entire amount which the estate could recover from West American under the Hurley policy. Accordingly, we find that plaintiffs are entitled to judgment as a matter of law.

For the foregoing reasons, we enter the following

## ORDER

And now, May 25, 1988, it is hereby ordered and decreed that the motion for summary judgment of plaintiffs, West American Insurance Company and Marvin D. Hurley, be and is hereby granted.

Accordingly, it is declared that under the policy provisions of policy DPW 31-83458 P, plaintiff, West American Insurance Company, is under no duty to provide for payment in excess of $25,000 to defendant, Elizabeth J. Large, administratrix of the estate of Kathryn T. Large, deceased.