621 A.2d 635

**Dorothy JEFFREY, Appellant**

**v.**

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1992.

Filed Feb. 26, 1993.

John W. McCandless, Erie, for appellant.

Craig R.F. Murphey, Erie, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

CAVANAUGH, Judge:

Appellant Dorothy Jeffrey appeals from an order granting judgment on the pleadings to the appellee Erie Insurance Exchange. The ultimate issue in this appeal is as follows:

> whether it is against the public policy of this Commonwealth for an insurer to reduce, dollar for dollar, the uninsured motorist coverage payments made to a guest passenger with liability coverage payments made under same policy to the same guest passenger if both the host driver and another uninsured driver are jointly liable for the injuries suffered by the passenger.

Resolution of this issue requires us to revisit the typically troublesome area of the interrelated requirements of the Uninsured Motorists Coverage Act, 40 Pa.S. § 2000 *et seq.* (UMCA) and the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* (MVFRL) Our review of this area indicates that judgment on the pleadings was appropriately granted. We affirm.

The facts of this case are undisputed. On May 19, 1989, the appellant was riding in an automobile operated by her daughter, Myra Zilhaver, when she was seriously injured in a collision with a car operated by an uninsured driver, Arthur Blackwell. Her daughter's vehicle was covered by a policy issued by the appellee. The appellant was not a named

insured under the policy issued by the appellee, and was not a resident of a named insured's household.[1]

The appellee' policy provides bodily injury liability coverage of $100,000 per person and uninsured motorist coverage of $100,000 per person. Asserting that her damages in the accident far exceeded $100,000, the appellant made a claim upon the appellee to recover under both the liability and uninsured motorist provisions of its policy. The appellee did not dispute its responsibility to pay out the policy's liability coverage limit, $100,000, but denied that the appellant under the policy could additionally receive uninsurance benefits. As a result of negotiations, the appellant and the appellee agreed to settle the liability of Myra Zilhaver for the policy liability limits of $100,000, in exchange for the execution of a release, which preserved the appellant's right to proceed against the appellee for uninsured motorist benefits. The instant action was initiated subsequently by the filing of a Petition to Compel Arbitration.

In her petition, the appellant alleged that her injuries were proximately caused by the uninsured driver and she requested that the court direct the appellee to arbitrate her uninsured motorist claim. The appellee filed in response an Answer and, as New Matter, a Counterclaim for Declaratory Judgment. The appellee alleged in it (1) the insured was solely responsible for the accident and (2) that a provision in the policy barred the present attempt to recover both liability coverage and uninsured motorists coverage. The provision referred to reads as follows:

**Reductions**

The amount of damages paid or payable under this Uninsured/Underinsured Motorists Coverage will be reduced by:

(1) the amounts paid or payable by or for those liable for bodily injury to anyone we protect;

(2) the amount of Liability Protection Paid or payable to anyone we protect.

1. The named insureds under the policy were Zilhaver Auto Sales, James Zilhaver and Myra Zilhaver.

The appellee noted that a proper contractual interpretation of this language would serve to reduce (set-off) the amounts potentially recoverable under the uninsured motorists coverage by the amounts recovered from the liability coverage. The practical effect of this would to bar the appellant's access to the uninsured motorist coverage, as the $100,000 limit of this coverage would be reduced by the $100,000 limit of liability coverage already paid by the appellee. In reply, the appellant again averred that the uninsured motorist was jointly and severally liable with the appellee's insured for the collision and the resulting injuries and damages.

On July 9, 1990, the appellant filed a Motion for Judgment on the Pleadings, requesting that the reduction provision *supra*, more commonly known in the insurance industry as a "set-off clause," be declared void as against public policy and that an arbitration of her claim be ordered. On August 16, 1990, the appellee filed a Counter–Motion for Judgment on the Pleadings seeking enforcement of the contract. As noted *supra*, enforcement of the contract would preclude the appellant's recovery of uninsured benefits and consequently, obviate the need for arbitration. The lower court agreed with the appellee, and granted its Counter–Motion for Judgment on the Pleadings.

Pertinent to this appeal, the lower court declared that the set-off does not violate public policy. It noted that "[n]either the Uninsured Motorist Coverage Act nor the M.V.F.R.L. preclude an insurer from reducing the uninsured motorist benefits of a policy by the amount claimant has received from the liability portion of the policy." It further relied on a number of recently decided cases which arguably support the validity of set-off clauses, including *Kovaleski v. Erie Insurance*, 398 Pa.Super. 519, 531, 581 A.2d 585, 591 (1990); *Newkirk v. United Services Automobile Assn.*, 388 Pa.Super. 54, 564 A.2d 1263, 1268 (1989) *alloc. den.*, 528 Pa. 624, 597 A.2d 1153; *Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988); *West American Ins. Co. v. Large*, 48 Pa.D. & C.3d 468 (1988). It is from the court's

order granting judgment on the pleadings that the appellant presently appeals.

The appellant makes the following two arguments: (1) the lower court erred in its determination that the present set-off clause is not void as repugnant to public policy and (2) the lower court erred by not finding the set-off provision ambiguous. We address first appellant's contractual argument, as we need not address appellant's public policy argument if we find her contractual argument persuasive.

■ The appellant argues that the policy set-off language *sub judice* is ambiguous and thus should be accordingly interpreted against the insurer. She relies on a recent Supreme Court case, *Bateman v. Motorists Mut. Ins. Co.*, 527 Pa. 241, 590 A.2d 281 (1991), which interpreted against an insurer set-off language which made it impossible for the reader to determine whether the insurer would deduct payments from the under-insurance policy limits or from the total damage suffered. She feels that we should interpret the present set-off language in light of *Bateman* to apply to total damages.

■ The principles governing the interpretation of insurance contracts are well-settled. Review is directed at ascertaining the intent of the parties as manifested by the written instrument. Where the provision of a policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument. Where the language of an insurance contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind C. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). A court may not "rewrite" an insurance contract, or construe clear and unambiguous language to mean other than what it says. *Guardian Life Insurance Co. v. Zerance*, 505 Pa. 345, 353, 479 A.2d 949, 953 (1984); *Patterson v. Reliance Insurance Cos.*, 332 Pa.Super. 592, 595, 481 A.2d 947, 949 (1984). An insured will not be heard to complain that his reasonable expectations were frustrated by policy terms which are clear and unambiguous. *Neil v. Allstate Insurance Co.*, 379 Pa.Super. 299, 311, 549

A.2d 1304, 1309 (1988), *alloc. den.*, 522 Pa. 578, 559 A.2d 38 (1989). Such a provision may only be avoided if it violates public policy. *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 595, 539 A.2d 1354, 1355 (1988).

We find the appellant's reliance on *Bateman, supra,* misplaced, as the present language differs significantly from the set-off language in that case. The automobile insurance policy issued by the appellee contains the following set-off clause:

**· Reductions**

The amount of damages paid or payable under this Uninsured/Underinsurance Motorists will be reduced by:

(1) The amounts paid or payable by or for those liable for bodily injury to anyone we protect.

(2) The amount of Liability Protection paid or payable to anyone we protect.

This language unambiguously reduces the Uninsured/Underinsurance Motorist coverage by that amount payable for bodily injury or liability protection under the policy. In contrast, the objectionable language in *Bateman, supra,* stated in circumlocutory fashion as follows:

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid . . . on behalf of persons or organizations who may be responsible.

*Bateman, supra,* 527 Pa. at 245, 590 A.2d at 283. This language, as the Court properly ruled, was unclear in its use of the word "otherwise" under the policy at issue. The problem generated by the use of this word is that under the policy only under-insurance benefits were payable. Thus, there were no other payments that could be potentially payable in a different way or manner which are to be reduced by sums paid by others. The inclusion of the word "otherwise" made an interpretation that the clause referred to its under-insurance limits an impossibility, and rendered the clause ambiguous. The court agreed with the insured that the set-off clause's reference to damages otherwise payable could also refer to the *total* damages sustained by the insured.

In the case *sub judice*, no such problem is existent. The chosen policy language refers directly to what coverage will be offset against Underinsured/Uninsurance payments. The language is clear in both its phrasing and effect. We note that this Court has held that a very similar set-off provision unambiguously required Underinsurance/Uninsurance payments be reduced by amounts paid on account of bodily injury liability. *Sparler v. Fireman's Insurance Co.,* 360 Pa.Super. 597, 521 A.2d 433 (1987).[2] We accordingly find appellant's contractual interpretation argument unpersuasive.

We turn to the ultimate issue before us, whether it is against the public policy of this Commonwealth for an automobile policy to contain a provision which sets-off (reduces), dollar for dollar, the uninsured motorist coverage payments made to a guest passenger with the liability coverage payments made under the same policy to the same guest passenger. The appellant claims that the set-off clause *sub judice*, properly viewed, is an attempt to eliminate or diminish the statutory mandated floor of minimum Uninsured Motorists coverage. The appellant supports this position with the following discrete arguments.

First, the appellant asserts that the Underinsured Motorists Coverage Act ("UMCA"), 40 Pa.S. § 2000 *et seq.*, mandates that insurers offer uninsured coverage for persons like the appellant. She cites the following provision, 40 Pa.S. § 2000(a), as support for her argument:

No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered and principally garaged in this State, unless coverage is provided therein or supple-

---

**2.** The set-off clause in *Sparler, supra,* reads as follows:

Any amounts payable under Part 6 shall be reduced by all sums:
 (a) paid because of bodily injury by or on behalf of someone who may be liable.

*Sparler, supra* at 606–7, 521 A.2d at 437. "Part 6" in the Sparler policy provided for underinsured and underinsurance motorist coverage. *Id.*

mental thereto in limits for bodily injury or death ... for the protection of persons insured there under who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

She notes that the statute contains only three statutory exclusions for the required compensation of an insured for damages by the owner of an uninsured vehicle,[3] none of which pertains to an attempt to seek both liability coverage and uninsured coverage under the same policy.

Second, the appellant argues that our alleged principle of "maximum feasible restoration" militates that we find in her favor, as does our policy of liberally construing the Underinsured Motorists Coverage Act ("UMCA"), 40 Pa.S. § 2000 *et seq.*, to find coverage unless strong legal or equitable considerations to the contrary are present. *See, e.g., State Farm Ins. Co. v. Bullock,* 316 Pa.Super. 475, 483, 463 A.2d 463, 466–7 (1983); *Sands v. Granite Mutual Insurance Company,* 232 Pa.Super. 70, 81, 331 A.2d 711, 717 (1974). Although acknowledging that the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1731 *et seq.*, has been passed subsequent to the passage of the UMCA, she avers that we should look to the policies undergirding the UMCA for an answer to the present issue as the Act has not been repealed. She asserts that failing to interpret as void the set-off provision will deny monetary protection for persons like the appellant who suffer injury at the hands of an irresponsible driver.

Third, the appellant claims that the purpose of uninsured motorist coverage is to protect against an uninsured motorist's negligence, and she posits that there is no relevance to the fact that the claimant has already collected the liability limits of the appellee's policy. The appellant notes there are two

---

**3.** 40 Pa.S. § 2000(e) contains these exclusions, which are as follows: (1) property damages; (2) bodily injury damage when his insured or his representative has without written consent of the insurance carrier settled or prosecuted to judgment any action against any person or persons liable for such injuries; or (3) any damage, the payment of which would be for the direct or indirect benefit of a Workmen's Compensation carrier.

tortfeasors in this case: the uninsured motorist, Arthur Blackwell, and the driver of the car she was a passenger in, Myra Zilhaver. She feels the set-off clause deprives her from recovering for the uninsured tortfeasor's negligence. As the appellee has already paid her the one hundred thousand dollar limit ($100,000) of Myra Zilhaver's liability coverage, a dollar for dollar set-off prevents the appellant's access to the one hundred thousand dollar ($100,000) available under the Uninsured Motorist Coverage for Mr. Blackwell's negligence.

The appellant distinguishes the case *sub judice* from the the the principles arising out of *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988) and its progeny by claiming that those cases involved *underinsurance claims* as opposed to an uninsured claim, and *single vehicle accidents* instead of a two vehicle accident. She claims that the uninsurance-underinsurance distinction set forth *supra* supports a liberal interpretation of the coverage she is entitled to. Moreover, a single vehicle accident, by nature, only involves one tortfeasor's negligence. She claims that *Wolgemuth et al.* simply do not speak to a situation where *both* an insured host driver and an uninsured driver are negligent in an accident.

Before proceeding, we think it pertinent to analyze what the appellant means by the contractual provision being void as against public policy. We have used the phrase "public policy" in a general sense to mean that in certain egregious circumstances an contract will be declared void if it "so obviously for or against the public health, safety, morals or welfare that there is virtual unanimity in regard to it, that a court may constitute itself the voice of the community...." *Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941), *as quoted in Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 303, 549 A.2d 1304, 1305 (1988); *accord Guardian Life Insurance Co. v. Zerance*, 505 Pa. 345, 479 A.2d 949, 954 (1984). The appellant does not argue that the contract is against public policy in this sense, nor would we find the set-off clause to present even a colorable issue that public policy meets this heightened standard. However, we have also used the phrase "public policy" to indicate that we would interpret particular

statutes broadly to help manifest their legislative intent. One of the statutes where we have done so is the UMCA. The seminal case from the Supreme Court on this point in *Harleysville M. Cas. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112, 115 (1968), where the Court declared that uninsured motorist statute should be liberally construed to effect its legislative intent.

We have best articulated this second meaning in reference to uninsured motorist coverage as follows:

> The legislative intent in enacting the uninsured motorist law [ ] requires a liberal construction of the statute, and a pronounced propensity on the part of courts to find coverage unless equally strong or equitable considerations to the contrary are present ... Courts frequently rely upon public policy in overriding explicit terms in the insurance contract, at least when the contract terms would operate to defeat the reasonable expectations of the insured, because insurance carriers are affected with the public interest and are in a better position to more equitably divide the risk of personal tragedy, insofar as such tragedy can be expressed in dollars and cents. See R. Keeton, Insurance Law § 22 341–2 (1971)

*Sands, supra,* 232 Pa.Super. at 80–81, 331 A.2d at 716–7.

■ Our policy of liberally interpreting the UMCA should be distinguished from the principle of "maximum feasible restoration," which derives from the now defunct No-fault Act. This principle was articulated in the Legislative Findings section of that Act, which courts of this jurisdiction interpreted to mandate "maximum feasible restoration." *See* former 40 P.S. § 1009.102(a)(3);[4] *Tubner v. State Farm Mutual Automobile Ins. Co.,* 496 Pa. 215, 218, 436 A.2d 621, 622 (1981); *Prudential Property and Casualty Ins. Co. v. Falligan,* 335

---

**4.** The former 40 P.S. § 1009.102(a) stated in pertinent part:

(a) Findings.—The General Assembly hereby finds and declares that:

\* \* \* \* \* \*

(3) the maximum feasible restoration of all individuals injured and compensation of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce; ...

Pa.Super. 195, 202, 484 A.2d 88, 92 (1984). The No-fault Act has subsequently been repealed and replaced by the MVFRL, and we believe the MVFRL is an implicit rejection of this approach. *See, e.g., Wolgemuth, supra,* 370 Pa.Super. at 63, 535 A.2d at 1151. Although we are cognizant that the UMCA must be liberally interpreted, we reject the appellant's belief that she is entitled to "maximum feasible restoration," as we find that this principle is no longer existent in Pennsylvania law.[5]

We are unpersuaded by appellant's arguments that the set-off clause *sub judice* violates "public policy" in the former sense. "Public policy is determined with reference to the laws and legal precedents rather than from general considerations of supposed public interest." *Daley–Sand v. West American Ins. Co.,* 387 Pa.Super. 630, 637, 564 A.2d 965 (1989); *accord Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 354, 479 A.2d 949, 954 (1984). We address first appellant's statutory argument, as our examination of this question begins, as usual, with the relevant statutory language.

■ Neither the UMCA or the MVFRL contains a provision which either directly or by implication precludes an insurer from reducing uninsured motorist benefits by the amounts recovered under the liability portion of the same policy. As indicated supra, the operative provision of the UMCA, 40 Pa.S. § 2000(a), reads as follows:

No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect

**5.** We note that this court's decision in *Ector v. Motorists Ins. Companies,* 391 Pa.Super. 458, 571 A.2d 457 (1990), *alloc. den.* in 525 Pa. 646, 581 A.2d 572. Recognizes that the "maximum feasible restoration" principle was confined to the No-fault Act and is not been carried over into the MVFRL, which contains no Legislative Findings section. *Id.,* 391 Pa.Super. at 466, 571 A.2d at 461.

We disagree, however, with any implication in *Ector* that our responsibility to "liberally construe" the UMCA and the MVFRL is as broad a judicial mandate to effectuate coverage as was the "maximum feasible restoration" principle in the now defunct No-Fault Act.

to any motor vehicle registered and principally garaged in this State, *unless coverage is provided therein or supplemental thereto in limits for bodily injury or death ... for the protection of persons insured there under who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom. (emphasis added)

The MVFRL's provisions respecting uninsured motorist coverage provide that such coverage is intended to provide protection "for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from the owners or operators of uninsured motor vehicles." 75 Pa.C.S.A. 1731(b).

These provisions do not require that a guest passenger have access to both uninsured coverage and the liability coverage of the same policy, but merely require that uninsured coverage exist.[6] We do not believe the requirement that each coverage exist leads to the necessary conclusion that a claimant must recover uninsured coverage unconditionally. In *Newkirk v. United Services Automobile Association,* 388 Pa.Super. 54, 564 A.2d 1263 (1989), we found unconvincing a similar argument in the context of underinsurance:

... [O]ur enforcement of the "family car exclusion" does not violate section 1731(a) of the MVFRL. Mr. Newkirk's policy with USAA does provide underinsurance motorist vehicle benefits in an amount equal to the liability coverage included in the policy. *The fact that Mrs. Newkirk cannot recover such benefits in this situation does not nullify the existence of those benefits in the policy.*

(emphasis added)

*Newkirk, supra* at 64, 564 A.2d at 1268.

■ We are not convinced, moreover, that the three exclusions in the UMCA brought to our attention by the appellant militate in favor of her position. We do not believe the legislature in designating these broad, general exclusions con-

6. Pursuant to an amendment to the MVFRL, effective July 1, 1990, uninsured coverage is no longer mandatory. See 75 Pa.C.S.A. § 1731.

sidered (and rejected) as a possible exclusion under the UMCA a set-off clause. A set-off clause is not an exclusion of coverage. Rather, it merely works to limit the total amount of compensation payable as a result of one accident under the policy. Thus, the statutory language in the UMCA begs the question as to whether it violates public policy for an insurer to set-off uninsurance coverage payments with liability coverage payments.

 This is not altogether true of the statutory language of the MVFRL, which actually supports the *appellee's* position. In *Wolgemuth v. Harleysville Mut. Ins.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988), we interpreted similar language § 1731(b), *supra*, to imply the necessity of two insurance policies. In that case, a guest passenger was killed in a single vehicle accident. She received the limits of the liability portion of the host driver's insurance policy, but the insurer denied the decedent's claim for underinsurance benefits under the same policy because the terms of the policy precluded the insured vehicle from being considered underinsured. We held that such an exclusion did not violate public policy. Citing 75 Pa.C.S.A. § 1731(c), we declared that "[t]he language of the [MVFRL] itself suggest that underinsured motorist coverage requires the existence of at least two applicable policies of motor vehicle insurance." *Id.* at 58, 535 A.2d at 1149. We went on to rule that the statute contemplates the existence of two insurance policies. *Id.* One policy would be the source of liability coverage, applicable to the host vehicle which is at fault in causing the injury to the claimant. *Id.* The other policy would be the source of underinsurance coverage, and under this second policy the claimant would be either an insured or a covered person. *Id.*

Pertinent to the present analysis, § 1731(c), which we stated suggests the existence of two policies, is identical in all relevant respects to § 1731(b) supra, the provision of the MVFRL where uninsured coverage is mandated.[7] Thus, simi-

7. 75 Pa.C.S.A. § 1731(b) provides as follows:
 **(b) Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of

larly, it could be argued that § 1731(b) contemplates a second policy of insurance for recovery of an underinsurance claim. This militates against appellant's position, as she is attempting to recover under the host driver's uninsurance policy, not her own.

We find that the language of the UMCA and the MVFRL does not support the appellant's position, and that, if anything, the language of the MVFRL could be read to support the *appellee's* position.

 We next address appellant's second rationale for reversal, that a liberal construction of the UMCA militates in her favor. Having already examined the relevant statutory language, we look to specific past decisions in this Commonwealth for articulation of what constitutes public policy. Reviewing our past decisions, both under the UMCA and the MVFRL, we find articulated principles which militate that we find that the set-off provision does not violate public policy.

In a case under the now repealed No-fault Act [8] with many similarities to the one *sub judice, McMullin v. Dallago,* 353 Pa.Super. 527, 510 A.2d 787 (1986), we rejected the notion that the Act's policy in favor of "maximum feasible restoration" necessarily entailed finding that a person could recover from both the uninsurance benefits and liability benefits from the same insurance policy. In *McMullin,* the plaintiff was walking along the highway when he was struck by two vehicles. The first vehicle was insured by Aetna Life & Casualty Company. The other vehicle was never identified and therefore was considered uninsured. The plaintiff sought recovery

maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles ...

75 Pa.C.S.A. § 1731(c) presents the same text:

**(c) Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles ...

**8.** Act of July 19, 1974, P.L. 489, No 176, 40 P.S. § 1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

under both the liability coverage and the uninsured motorist coverage provided by the Aetna policy.

This court affirmed the trial court's dismissal of the count in which the plaintiff sought uninsured motorist benefits from Aetna. Without discussing the terms of the policy at issue, the court noted under the No–Fault Act the plaintiff was already eligible for "basic loss insurance" and tort liability coverage. *Id.* at 535, 510 A.2d at 791. Declaring that "[u]ninsured motorist benefits will not automatically accrue simply because an uninsured vehicle or driver is involved in an automobile accident," *Id.* at 536, 510 A.2d at 792. The court found that asking Aetna to also pay uninsured motorist benefits to the uninsured pedestrian would be "[a]sking Aetna to pay twice the amount of damages it is obligated to pay under the insurance policy [which is] totally contrary to the [No–Fault] Act, and to the legislative policy underlying the Act." *Id.* at 535–6, 510 A.2d at 792.

Admittedly, the precedential value of *McMullin* may be called into question because it was decided under the No–Fault Act, which was repealed effective Oct. 1, 1984. Formerly, under the No–Fault Act, "basic loss benefits" were provided for the "net loss sustained by a victim and entailed the coverage of medical expenses, work loss sums, replacement services and survivors losses. See former 40 Pa.S. §§ 1009.-103 and 1009.202. However, as noted *supra*, in repealing the No–Fault Act the legislature did away with the Legislative Findings section of the Act, which courts of this jurisdiction interpreted to mandate "maximum feasible restoration." The principle we derive from *McMullin* is that it is not against public policy *per se*, even where "maximum feasible restoration" is mandated, to deny an injured person with no policy of his own recovery under the liability provision and the uninsured provisions of the policy. Similar to the present case, we note that *McMullin* contained a uninsurance claim in the context of a two car accident involving two tortfeasor drivers.

We also find pertinent cases decided under the UMCA which, even under our policy of liberal interpretation, limit recovery of a so-called "class two" insured to only those

uninsured benefits such a claimant could have reasonably expected. In *Utica Mutual Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), the Court was faced with the issue of whether all insureds could stack uninsured motorists coverage. In *Utica,* the decedent was operating his employer's automobile when he was involved in a minor traffic accident. While in the course of giving a police officer information concerning the accident, he was struck and killed by an uninsured vehicle. The vehicle the decedent occupied was insured under a "fleet policy" which covered 15 of the employer's vehicles. Pertinent to this appeal, the decedent's estate attempted to stack the coverages provided under the commercial fleet policy.

The Court on appeal held that a person who is the occupant of a fleet policy is not entitled to stack coverages. *Id.* at 339, 473 A.2d at 1011. The Court started by noting that the Court has justified stacking in the past under two basic rationales: (1) it furthers the policies of the UMCA; and (2) the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. *Id.* at 338, 473 A.2d at 1010. It specifically stated "[t]he latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each." *Id.* The Court went on to distinguish between three classes of insureds contained in most motorist policies: (1) "class one" includes "the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either"; (2) "class two" includes "any other person while occupying an insured highway vehicle"; and (3) "class three" includes "any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under [ (1) ] or [ (2) ] above." *Id.* The Court found that because the decedent's claim was based on his occupancy of the vehicle at the time of the accident, this was a "class two" claim. *Id.* The Court then declared as follows in completing its analysis:

A claimant whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, .and there is no basis upon which he can reasonably expect multiple coverage.

*Id.* at 339, 473 A.2d at 1011. The Court accordingly ruled that there was no basis upon which he could stack coverages applicable to the other vehicles, and his recovery under the insurance policy was limited to the limits of the underinsurance coverage applicable to the vehicle he was operating.

We also find persuasive on this issue this court's decision in *Providence Washington Ins. Co. v. Rosato*, 328 Pa.Super. 290, 476 A.2d 1334 (1984). In *Providence*, Ms. Rosato was fatally injured while riding as a guest passenger on a motorcycle which was struck by an uninsured vehicle. The motorcycle was owned by a dealer who insured the vehicle under a "fleet policy" along with nine other vehicles. Ms. Rosato's estate claimed uninsured motorists coverage for each of the vehicles. The insurance company denied her claim, citing a provision of it's insurance policy which limited claimants to a single limit of uninsured motorists coverage. On appeal, this court held that the policy provision was not in derogation of the liberality with which the UMCA has traditionally been interpreted. *Id.* at 299–300, 476 A.2d at 1339. We noted that stacking allows an insured to get the full benefit of premiums he or she paid. *Id.* at 294–5, 476 A.2d at 1337. We stressed, relying on *Utica, supra*, that any entitlement Ms. Rosato had to benefits came from her status as an occupant, rather than as a specific beneficiary of the insurance policy. *Id.* at 299, 476 A.2d at 1339. As Mrs. Rosato did not pay any premiums for the coverage, nor was an intended beneficiary of the coverage, it did not violate public policy to deny her ability to stack the insured's coverages.

Both these cases, particularly *Utica*, are highly pertinent to the matter at hand, and we do not believe the principles articulated in them are limited to "stacking." Both cases provide evidence that the policy of liberal interpretation

of the UMCA is not limitless, a proverbial House that Jack Built. These cases indicate that there is a correlation between the premiums paid by the insured and the coverage a claimant could reasonably expect to receive. The Court in *Utica* specifically noted that because a "class two insured" has no contractual relation with the insurer, and has paid no policy premiums for uninsured coverage, he has no reasonable expectation of multiple coverages.

We also take guidance from cases decided under the MVFRL. The legislative history of the MVFRL suggests that two major considerations prompted the repeal of the No–Fault Act and the passage of the MVFRL. One of these was rapidly escalating cost of automobile insurance. *See Wolgemuth, supra,* 370 Pa.Super. at 63, 535 A.2d at 1151. The other was the increasing numbers of uninsured motorists. *Id.*

In *Wolgemuth,* we addressed a situation with similar governing principles to the present case. In that case, a guest passenger injured in a single vehicle automobile accident attempted to recover under the host's insurance policy both liability benefits and underinsured benefits. The guest passenger similarly claimed that because the Pennsylvania legislature has made underinsurance motorist coverage mandatory, any policy provision which operates to deny a claimant underinsurance is against public policy. We rejected this argument for divers reasons. We found that a fundamental problem with this argument was that the statutory language of the MVFRL suggested that underinsurance motorist coverage requires the existence of two applicable policies of motor vehicle insurance:

> [T]he statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by

the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Wolgemuth, supra* at 58, 535 A.2d at 1149. Pertinent to this appeal, we declared later in the opinion with respect to a guest passenger:

> Appellant's decedent was a class two beneficiary ... As a class two beneficiary, [the guest passenger] has no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for such coverage, and had no reasonable expectations as to coverage under the policy issued by appellee. To permit appellant to recover benefits from appellee Harleysville under the circumstances of this case would be to convert the essentially first-party coverage into third-party liability coverage. As the Supreme Court of Minnesota stated in rejecting an identical argument:
>
> > Underinsured coverage is a first-party coverage and, in that sense, the coverage follows the person and not the vehicle. Here, however, the decedent passenger's heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third party liability coverage.
> >
> > The purpose of underinsurance is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. Ordinarily, a passenger injured in a one-car accident involving someone else's car, such as here, would be able to recover underinsured benefits from his or her underinsured motorist coverage. Decedent Myers, however, did not own a car and consequently had no such coverage. But Stein's insurance policy is not designed to compensate Stein or his additional insureds from Stein's failure to purchase sufficient liability insurance. Thus, we conclude that the definition of uninsured motor vehicle, which expressly

excludes the insured vehicle, is not void as violative of public policy.

*Wolgemuth, supra* at 59–60, 535 A.2d at 1149–50, *quoting in part Myers v. State Farm Mutual Automobile Ins. Co.,* 336 N.W.2d 288, 291 (Minn.1983).

The importance of our decision in *Wolgemuth* is highlighted by the fact we have reaffirmed its principles repeatedly. *See, e.g., Sturkie v. Erie Insurance Group,* 407 Pa.Super. 117, 595 A.2d 152 (1991); *Caldararo v. Keystone Insurance Company,* 393 Pa.Super. 103, 573 A.2d 1108 (1990); *Newkirk v. United Services Automobile Association,* 388 Pa.Super. 54, 564 A.2d 1263 (1989); *Stolec v. State Farm Fire and Casualty Co.,* 380 Pa.Super. 492, 552 A.2d 296 (1988). Our decision in *Newkirk* is of particular importance.

In *Newkirk,* we rejected the notion that the principles articulated in *Wolgemuth,* despite the language *supra* relating to the importance of the appellant's class two beneficiary status, did not prevent a guest passenger who was a class one beneficiary of the insured driver's (her husband) policy from recovering liability coverage and underinsurance coverage from the same policy. We found this despite the fact that since she had no automobile policy of her own, presumably unlike the appellant in *Wolgemuth,* enforcing the policy's terms would deny her access to any underinsured motorists coverage. *Id.,* 368 Pa.Super. at 61, 564 A.2d at 1266. We found denial, however, to be in accord with public policy. We explained that when the legislature created the underinsured provisions of the MVFRL, "they simply did not intend for an individual to recover third party liability benefits from the same automobile insurance policy." *Id.* at 63, 564 A.2d at 1267. Our legislature enacted underinsured motorist coverage because of the inequities brought about because only uninsured motorist coverage was required by law. *Id.* Situations arose where a claimant who had purchased uninsured coverage was involved in an accident with an underinsured motorist. *Id.* In these situations, the claimant many times would be able to recover more insurance from the uninsured motorist than the underinsured one. The MVFRL helped fill this gap

by the requirement of underinsurance. We went on to say, albeit in *dicta*, as follows:

Our legislature thus intended underinsured motorist coverage to operate in the same manner as uninsured motorist coverage only for motorists who were injured by underinsured motorists.

With uninsured motorist coverage, a claimant cannot recover third party liability benefits and uninsured motorist coverage from a tortfeasor's policy of insurance. The reason for this is clear. If the tortfeasor has third party liability coverage from which the claimant can recover, then the tortfeasor is not uninsured and the claimant is not eligible to recover any uninsured motorist benefits. See 75 Pa.C.S. § 1701 (uninsured motor vehicle is a motor vehicle for which there is no liability insurance). *When the claimant is entitled to recover uninsured motorist benefits because the tortfeasor is uninsured, the claimant recovers those benefits through his or her own policy of insurance.*

(Emphasis added, "own" emphasized in original.)

Reviewing the foregoing pronouncements of courts in this Commonwealth, we are reluctant to find that a guest passenger, a class two insured, must have the ability to recover both uninsured benefits and liability benefits from the same policy without further guidance from our legislature or the Insurance Commissioner.[9] The appellant's claim is predicated solely

---

**9.** The Insurance Department has issued a sample form for Uninsured Motorists Coverage which actually supports the notion that the set-off provision does not violate public policy. See 31 Pa.Code § 63.2, Exhibit C, "Conditions," 6(c) ("any payment made under this endorsement to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the Bodily Injury Liability Coverage of the policy."). We note that this language is seemingly paralleled in the appellee's insurance policy.

The Pennsylvania Insurance Department's Guidelines For Filings Under the Motor Vehicle Financial Responsibility Law, which also address the ability of insurers to reduce ("set off") uninsurance coverage, do not contradict their earlier pronouncement:

Policies may not provide any reduction of uninsured motorist or underinsured motorist benefits because of any first party benefits paid. However, uninsured/underinsured motorist benefits will not duplicate payments made under the mandatory first party benefits or

upon her occupancy of the insured's vehicle. The appellant did not have a contractual relation with the insurance company. She has neither paid premiums nor was a specifically designated beneficiary of the policy. We do not believe that a guest passenger can reasonably expect to receive the liability limits of the coverage and, additionally, uninsurance motorist benefits, from the same policy. As a guest passenger does not have a reasonable expectation that he can "stack" the insured's coverage, we do not believe one can expect to recover both under the liability coverage of the policy and the uninsurance coverage.[10]

The regime the appellant advocates would provide an injured guest passenger access to something an injured host driver would not receive himself. An injured host driver can not receive his own liability coverage. Liability coverage, by definition, protects against the risk of being sued for the insured's own negligence. If an insured host driver is negligent, he cannot sue himself for liability coverage. If another driver is negligent, the host driver proceeds against the other driver's liability coverage. We believe that the policyholder(s) would have to be a generous friend, indeed, to provide for a guest passenger to receive both liability coverage and unin-

> by the Catastrophic Loss Trust Fund. Policies may provide that a person's losses and damages resulting from injuries due to an accident with an uninsured/underinsured motorist will be reduced by any amounts received from the uninsured/underinsured motorist in determining the amount of uninsured/underinsured motorist benefits payable to that person.

Section C-6. We note that while the above provision prevents the reduction of uninsured benefits because of "first party benefits paid," it does not touch on the question of whether such benefits can be reduced because of liability benefits paid.

**10.** We note that parts of both *Wolgemuth* and *Newkirk* can be read to support an even broader proposition than the one decided today: it *does not violate public policy to bar a guest passenger access to a host driver's uninsurance coverage period.* Both cases were decided in the context of underinsured claims, and we need not address their full import today. We note that in stacking cases, while we have prevented "class two" insureds from stacking uninsurance coverage in a fleet policy, we have allowed without comment "class two" insureds access to the uninsurance coverage of the "host" vehicle. *See Utica, supra,* 504 Pa. at 341, 473 A.2d at 1012; *Rosato, supra,* 328 Pa.Super. at 300, 476 A.2d at 1339.

sured motorists coverage from the same policy, when a host driver would be prevented from receiving both coverages himself.

Moreover, we find problematic the distinction between a two car accident with two tortfeasor drivers and a two car accident with only one tortfeasor driver. *Ex ante*, the most that a guest passenger can reasonably anticipate receiving is either the liability coverage or the uninsurance coverage. A guest passenger can not anticipate that he will be involved in an automobile accident, nor can anticipate what sort of accident will occur, or who will be at fault. For us to accept the appellant's claim that public policy is violated here, we would have to sanction an element of randomness in the amount of benefits awarded depending on the scenario of an accident. A guest passenger would receive access to substantially more coverage simply because *two* vehicles' operators were negligent, not one. This is problematic, as it is extremely speculative whether the injuries caused to the guest passenger differ significantly whether one driver is negligent or two.

Take for example the case *sub judice*. Appellant's claim is predicated upon the belief that *both* vehicles' drivers were negligent in the accident where she sustained her injuries. She argues that the host driver's negligence allows her to recover the $100,000 liability coverage limits, *and* the uninsured driver's negligence allows her to recover, under the same policy, the $100,000 uninsured motorist coverage limits. Thus, since *two* drivers were allegedly negligent, she has access to $200,000 under both coverages. But assume that an accident occurred with the same two vehicles because of the negligence of *either* the host driver or the uninsured driver, not both. The appellant would have access to only the $100,000 limit of one coverage. If a host driver negligently hits another non-negligent uninsured vehicle, the guest passenger can only anticipate recovery up to the policy limits of the host driver's liability coverage, $100,000. If an uninsured driver negligently hits the host car, the guest passenger can only anticipate recovery up to the policy limits of the host driver's

uninsured motorists coverage, $100,000.[11] We see no sound reason why a guest passenger can reasonably expect to receive more coverage in a two car, two tortfeasor accident than a two car, one tortfeasor accident.

We reject the appellant's last claim that the offset provision deprives a guest passenger of uninsured coverage. We believe our prior cases afford the conclusion that uninsured coverage is not a supplement to the host driver's liability coverage. If an owner of an automobile wishes to supplement his liability coverage for himself, his family, or his guest passengers, he can always purchase increased liability coverage. Moreover, if a guest passenger wishes to purchase uninsured motorists coverage himself, that option is available. Uninsured motorist coverage is primarily a benefit awarded when a negligent uninsured motorist hits a non-negligent host vehicle.

An additional consideration to our disposition is that a contrary one could, in the long run, effect an increase in the cost of automobile insurance coverage. As we have noted *supra*, one purpose of the MVFRL was to reduce the cost of purchasing motor vehicle insurance. The MVFRL is in part a reaction to court decisions which in the view of the General Assembly extended insurance coverage beyond the bounds which it reasonably believed would occur. We believe and hold, even given our "pronounced propensity" under the UMCA to find coverage, that the set-off clause *sub judice* does not violate the public policy undergirding the UMCA.

Order affirmed.

FORD ELLIOTT, J., concurs in the result reached by the majority.

DEL SOLE, J. files a dissenting opinion.

DEL SOLE, Judge, dissenting:

Appellant, a guest passenger in an auto insured by Erie, was injured in a two vehicle accident. The second vehicle was

11. We note that the regime suggested by the appellant's position will make even less sense given the potential for claimants to characterize their injury as resulting from an accident with two tortfeasor drivers rather than one.

not insured and it is claimed that both drivers were negligent. As a result of the accident, Appellant claimed damages in excess of the liability limits of the policy covering the host vehicle, which were paid to her. She sought recovery from the uninsured motorist portion of the Erie policy and was denied. The ultimate issue in this appeal is whether a guest passenger can be denied recovery for uncompensated damages because of policy language that reduces the limit of uninsured motorist benefits by the amount paid under the liability coverages of the policy covering the host vehicle. Because I conclude that the set-off language of the policy results in the denial of uninsured motorist coverage in this instance, I believe that it is contrary to the public policy of this Commonwealth as expressed by the mandatory coverage requirements of the Uninsured Motorists Coverage Act, 40 Pa.S. § 2000 *et seq.* (UMCA) and the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* (MVFRL). Therefore, I dissent.

Under the provisions of both the UMCA and the MVFRL, as they applied to this case, Uninsured Motorist coverage was mandated. Under the UMCA, with two exceptions, no policy could issue unless coverage was provided for "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." This requirement was designed to provide monetary protection to persons, who while lawfully using the highways, were caused to suffer injury at the hands of an irresponsible driver. *Mitchell v. Prudential Property & Casualty Ins.*, 346 Pa.Super. 327, 499 A.2d 632 (1985). With the passage of the MVFRL the legislature declared that every motor vehicle liability insurance policy issued in this Commonwealth provide underinsured as well as uninsured motorist coverage. In so doing the legislature explicitly set out to require the purchase of uninsured and underinsured motorist coverages in amounts equal to, but not greater than, the liability coverage offered.[1]

1. Section 1731 of the MVFRL provided:
 (a) [Mandatory offering] No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with

*Wolgemuth v. Harleysville Mutual Ins.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988). The Act further required the purchase of liability coverage in specified minimum amounts. *See* 75 Pa.C.S.A. § 1702. "The legislature has thus prevented an insured from providing greater coverage, via uninsured/under-insured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence." *Id.* at 55 ftn. 3., 535 A.2d at 1147.

In the instant case Uninsured Motorist Coverage was said to be provided in the policy, yet by its terms Appellant is not protected and not able to collect damages as a result of being injured by an uninsured driver. Appellant as an occupant of the vehicle insured by Erie was a person "protected" under the terms of the policy. The policy also provided that it was to pay damages "that the law entitles you or your legal representatives to recover from the driver or owner of an uninsured motor vehicle." Despite these provisions Appellant cannot obtain uninsured motorist coverage under the instant policy because of the set-off language it contains.

The Majority accepts Erie's position that its set-off provision is acceptable and not violative of public policy as demonstrated by previous decisions of the courts of this Commonwealth. Erie contends this same issue was addressed by the Court of Common Pleas of Carbon County in *West American Insurance Company v. Large*, 48 Pa.D. & C.3d 468 (1988), wherein similar policy language was enforced. Recognizing that this court is not bound by the decision in *West American*, Erie cites to the cases *West American* looked to in arriving at its decision. The Majority concludes from these decisions that where the claimant is not a named insured or a member of the named insured's household and therefore has no contractual relationship with the insurer, policy provisions which operate

respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage.)

to deny uninsured motorist benefits are enforceable. I disagree.

In support of its argument Erie begins with reference to *McMullin v. Dallago,* 353 Pa.Super. 527, 510 A.2d 787 (1986). Therein an uninsured pedestrian was injured when struck by a vehicle insured by Aetna and another vehicle which fled the scene and was concluded to be uninsured. The pedestrian sought to recover basic loss benefits, liability benefits and uninsured motorist coverage from Aetna. Although the court refused to allow the pedestrian to recover the uninsured motorist benefits, this matter was decided under the now repealed No–Fault Act.[2]

In reaching its decision the *McMullin* court relied on other cases decided under the No–Fault Act. The court recounted that in those situations where an uninsured driver was found liable for an insured victim's injuries, the insured could recover basic loss benefits and damages in tort from the insured's own insurer. *See State Farm Mutual Automobile Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978). In instances where an uninsured individual was injured through the fault of an other uninsured individual, the injured party "could receive both basic loss benefits and uninsured motorist benefits under the assigned claims plan, with the latter benefits covering the victim's general tort damages" *McMullin v. Dallago,* 353 Pa.Super. 527, 533, 510 A.2d 787, 790. And, where an uninsured pedestrian was injured by an insured vehicle driven by an uninsured operator without permission, the victim could be paid both basic loss benefits and damages in tort. *See Prudential Property & Casualty Ins. Co. v. Falligan,* 335 Pa.Super. 195, 484 A.2d 88 (1984).

The *McMullin* court noted that in these earlier decisions the courts were concerned with effectuating the concept of maximum feasible restoration, which absent the inclusion of uninsured motorist benefits was not possible since both the victims and the tortfeasors were uninsured. Since the plain-

2. Act of July 19, 1974, P.L. 489, No 176, 40 P.S. § 1009.101 *et seq.,* repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

tiffs would only have been able to recover basic loss benefits, but not their damages in tort, it was necessary to award these plaintiffs uninsured motorist benefits.

In denying the recovery of uninsured motorist benefits in the case before it, the *McMullin* court found that maximum feasible restoration was already attained. In *McMullin* the uninsured victim was injured by both an unidentified vehicle, deemed uninsured, *and* an car covered by Aetna with a policy of basic loss insurance. The court ruled that since the plaintiff would receive basic loss benefits and damages in tort from the insurer, Aetna, it could not allow for the recovery of uninsured motorist benefits. The receipt of damages in tort and uninsured motorist benefits would amount to "double compensation" and was, therefore, disallowed. The court stated: " 'we cannot in equity and good conscience allow [Appellant] to receive more than one satisfaction for [his] injuries, by permitting [him] to be twice compensated for them at the expense of [Aetna]' " *McMullin v. Dallago*, 353 Pa.Super. at 536, 510 A.2d at 792, *citing Rossi v. State Farm Automobile Insurance Co.*, 318 Pa.Super. 386, 392, 465 A.2d 8, 11 (1983).

I find the decision in *McMullin v. Dallago* unhelpful in a resolution of the issue before us. The court in *McMullin* did not make its decision with reference to any policy provisions and the pedestrian's rights under that policy. An issue regarding a set-off provision, as is found in this case, was apparently not of concern. More importantly the *McMullin* decision was based upon the pedestrian's recovery under the repealed provisions of the No–Fault Act. Its ruling was premised on the concept that maximum feasible restoration was achieved under the Act with the receipt of basic loss benefits and damages in tort. The additional receipt of uninsured motorist benefits constituted a double recovery. Such is not of concern in the present action.

The injured guest passenger here is seeking only to recover for uncompensated injuries. While she sought recovery under the liability provision and uninsured motorist provision of Appellee's policy, the issue of a double recovery of basic loss

benefits, damages in tort and a receipt of uninsured motorist benefits is not an issue as it was previously under the No–Fault Act. Because this Appellant is seeking only maximum feasible restoration under the present law and not more than one satisfaction, I find the *McMullin* decision disallowing the recovery of uninsured motorist benefits, clearly distinguishable.

Erie finds the application of *Wolgemuth v. Harleysville Mutual Insurance Co., supra,* "even more relevant and important to the present case." The issue in *Wolgemuth* was framed by the court as a question of "whether a guest passenger, who is a covered person under the terms of a policy ... applicable to the host vehicle, and who is injured in a *single, vehicle accident,* may recover underinsurance benefits ... when that passenger has already received the limits of the liability coverage under that same policy." *Id.* 370 Pa.Super. at 53, 535 A.2d at 1146. [emphasis added.] The policy at issue in *Wolgemuth* provided that the insured vehicle could not be an "underinsured motor vehicle" for purposes of determining entitlement to underinsured motorist benefits and the court upheld this provision which operated to preclude recovery of underinsured benefits from the estate of the guest passenger.

Erie contends that this decision is particularly relevant because the court rejected an attack on the policy language based upon a public policy argument. Relying on the fact that the person who sought to recover under the policy in *Wolgemuth,* like Appellant in the instant case, was a guest passenger and not a named insured, Erie maintains that the *Wolgemuth* decision should be persuasive in a resolution of the matter before us.

The *Wolgemuth* court did call attention to the fact that the claimant was a "class two beneficiary" [a guest passenger] and therefor had "no recognizable contractual relationship with the insurer." *Id.* at 59, 535 A.2d at 1149. The court ruled that to permit the appellant to recover underinsured motorist benefits "under the circumstances of this case would be to convert the essentially first party underinsured motorist coverage into

third party liability coverage." *Id.* at 60, 535 A.2d at 1150. These conclusions were based, however, on the fact that underinsurance motorist coverage, by its nature, requires the existence of at least two applicable policies of motor vehicle insurance. The court stated:

> An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Id.* at 58, 535 A.2d at 1145.

The significance of the concept referred to in *Wolgemuth,* that requires the existence of at least two applicable policies of motor vehicle insurance before the matter of underinsurance coverage can be an issue, is evidenced by this court's decision in *Caldararo v. Keystone Insurance Co.,* 393 Pa.Super. 103, 573 A.2d 1108 (1990). There we found that the claimant's status as a class one or class two beneficiary was not the basis for the *Wolgemuth* decision. Rather, the purpose of underinsured motorist coverage, which presumes the applicability of two policies, formed the basis for the court's decision. The *Caldararo* court determined that it would enforce a policy exclusion which operated to deny the appellant the right to recover underinsured motorist benefits under a provision which declared that an "underinsured motor vehicle" does not include any vehicle "owned by . . . you or any family member." The appellant, who did own the vehicle in which he was traveling with his wife at the time of the accident, was unsuccessful in his attempt to persuade the court that his status as insured distinguished him from the class two beneficiary passenger who sought recovery in *Wolgemuth.*

*Caldararo* highlights the fact the the claimant's beneficiary status in a single vehicle accident does not control the outcome of the claimant's underinsured motorist claim. The decision to enforce a provision precluding such recovery in *Wolgemuth* was based upon the fact that a single vehicle accident, and thus one policy of insurance was involved and yet recovery was being sought for underinsured motorist coverage, which contemplates the existence of a two policy. The second policy should be the source of coverage in the event the liability coverage provided in the first policy did not fully compensate the claimant.

Because the *Wolgemuth* decision rests with an examination of the nature of underinsured motorist coverage and the application of two policies, it is inapplicable to the instant case. Uninsured motorist coverage is sought precisely because no other policy exists. While two policies would be required in an underinsured motorist case, by its very nature uninsured motorist protection contemplates only one policy. Because of this clear distinction, the *Wolgemuth* line of authority has no place in the analysis of this uninsured motorist case.

As an aid to examination of the policy before us, it is appropriate to consider the mandatory nature of the coverage at issue, the rationale provided in the decisions from other jurisdictions and the guidance offered by the Pennsylvania Insurance Department. It is in this later category where the Majority claims support, while my interpretation would lead to an opposite result. *See* Majority Opinion at 505–06, ftn. 9.

The Majority quotes the language of a sample form provided by the Department and states that it is "seemingly parallel" to the language at issue. *Id.* The sample form provides that "any payment made under this endorsement to or for any insured shall be applied in reduction of the amount of *damages* which he may be entitled to recover from any person insured under the Bodily Injury Liability Coverage of the policy." The Department's sample form only limits the amount potentially recoverable as damages. It would allow for the amount of a claimant's total liability damages to be reduced by the amount collected under the uninsured motorist

provisions of a policy. Such a provision protects against the payment of a double recovery. I do not disagree with such a provision. In this case the application of a similar provision would result in Appellant deducting from her total damages, the amount received under the liability portion of the policy, $100,000. However, it is because her damages are in excess of the amount she received under the liability portion of the policy that she is entitled to receive the benefits of the uninsured motorist coverage, to the extent that she is fully compensated or the uninsured motorist policy limits are exhausted. The language in the instant policy does not allow for such recovery, and in so doing does not, in effect, provide uninsured motorist coverage.

In contrast to the form language, the policy at issue does far more than simply reduce the amount of damages recoverable. Rather, it completely eliminates recovery of uninsured motorist benefits where the maximum amount of liability benefits have been received. Where one suffers damages in excess of the liability limits, and receives payment of those limits, the policy precludes the recovery of uninsured motorist benefits, despite the failure of the injured person to be fully compensated, and the legislature's insistence that such coverage is mandatory. Clearly the legislature did not intend this limited class of persons be denied the opportunity to seek full recovery. Further, such an offset is not sanctioned by any interpretation of the Insurance Department's sample form language.

The Supreme Court of Arizona considered a policy provision which also sought to reduce mandated coverage. It began by noting the purpose of a statute which made compulsory the inclusion of a stated minimal amount of uninsured motorists benefits.

> Thus, [the statute] allows the driver to protect himself and his passengers—most often his own family and friends—from the loss by injury caused by uninsured drivers to the same extent that he protects others from the risk of his own negligence.

*Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 731 P.2d 84, 87 (1986).

> The court remarked that the insured therefore:
>
> insured herself and her passenger against two separate risks: the risk of liability if she should negligently injure someone, and the risk of having no source from which to recover damages caused by a financially irresponsible driver who might injure her and/or another insured under her policy.
>
> *Id.*

In voiding a policy provision which required a reduction in the limits of liability under the uninsured motorist coverage by sums paid under the liability coverage provisions, the court determined that such an offset would operate to allow insurers, by contract, to alter the dictates of the statute and to escape all or part of the liability which the legislature intended that they should provide. The court stated:

> The clear meaning of this [statutory] provision is that an insured who exercises the statutory right to purchase UM coverage equal to the limit of liability coverage has available the total of the two in the event of an accident such as occurred here. Any attempt to reduce this coverage from the amount the legislature has given the insured the right to buy violates the uninsured motorist statute and is therefore void as against public policy.
>
> *Id.*

*See also Muir v. Hartford Accident and Indemnity Co.*, 147 Vt. 590, 522 A.2d 236 (1987) and *Johnson v. Jackson*, 504 So.2d 88 (La.App. 2d Cir.1987).

Here the policy provision clearly operates to deny Appellant, a "protected" person under the terms of the policy, from receiving uninsured motorist benefits, benefits which the legislature has required be included in policies. The host driver, Erie's insured, paid for liability insurance and uninsured motorist coverage. The later coverage was purchased to protect the insured, members of the insured's household, and "protected" persons, namely an individual such as Appellant, who was the insured's mother and a passenger in her vehicle, from

injuries caused by an irresponsible operator of another vehicle who is uninsured.

Appellant, as a guest passenger in the vehicle insured by Erie would be entitled to recover liability benefits under the Erie policy based upon the negligence of the host driver. Recovery of uninsured motorist benefits should also be allowed in this case since it is based upon the negligence and absence of coverage of a second driver. With regard to the collection of uninsured motorist benefits, the negligence and inadequacy of coverage of the host driver is not an issue. Uninsured motorist coverage is to benefit a covered person for uncompensated injuries received as a result of the negligence of an uninsured driver.

Erie's insured sought to purchase, as required by statute, uninsured motorist coverage to protect her and other "protected" persons from an unfortunate accident with an uninsured vehicle. In the instant case, Erie's insured purchased such coverage as directed by statute in an amount equal to the bodily injury liability coverage she purchased, $100,000. A provision which disallows recovery of uncompensated damages caused by an uninsured motorist where the injured party has collected maximum liability benefits under the policy, results in an elimination of uninsured motorist coverage, which coverage is mandated by statute. I deem such a provision to be inconsistent with the mandatory coverage requirements expressed by our legislature and contrary to the public policy of this Commonwealth.

I would thus conclude that Appellant as a "protected person" under the terms of the policy is entitled to pursue her claim for recovery of damages, up to the limits of the policy, for uncompensated injuries which she alleges were caused by the negligence of an uninsured driver. Accordingly, I dissent.